Everett B. ROBINSON, Appellant,

v.

Bobby FREEZE, Deputy Sheriff, Little River County, Appellee.

No. 93–2308.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 3, 1993.

Decided Jan. 28, 1994.

Appellant, pro se.

David H. White and Ralph Ohm, Hot Springs, AR, for appellee.

Before FAGG, BOWMAN, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

Arkansas inmate Everett B. Robinson commenced this 42 U.S.C. § 1983 action against Bobby Freeze, former Deputy Sheriff of Little River County, Arkansas. Robinson alleged that Freeze, while acting as bailiff at Robinson's burglary trial, improperly communicated with the jury and mishandled evidence in the jurors' presence. The district court granted summary judgment to Freeze, concluding that he is protected by absolute quasi-judicial immunity. Robinson appeals. We reverse and remand.

## I.

In 1989, an Arkansas jury convicted Robinson of burglary and property theft. In his direct appeal, Robinson raised a due process claim based on Freeze's alleged misconduct at trial, but the state court refused to consider the claim because Robinson had raised it for the first time on appeal. *Robinson v. State*, No. CACR 90–79, 1990 WL 188809, at *1, 1990 Ark.App. LEXIS 645, at *2 (Ark.Ct. App. Nov. 28, 1990). Robinson's federal habeas corpus claim on this ground was subsequently dismissed as procedurally barred. *See Robinson v. Lockhart*, No. 91–3604, slip op. at 3, 1992 WL 124411 (8th Cir. June 11, 1992).

Robinson then brought this § 1983 damage action, alleging that Freeze denied Robinson a fair trial by making derogatory remarks about his guilt during trial; by making derogatory remarks about Robinson to the jurors during their deliberations; by taking photographs of evidence and removing evidence from the jury room; and by referring to evidence in front of jurors as the "watch

[Robinson] stole." Freeze moved for summary judgment, arguing that he was entitled to absolute immunity. In support, Freeze submitted an affidavit by the presiding judge that he had instructed Freeze to ensure the jury's sequestration, to maintain security in the courtroom, to locate witnesses called to testify, and to otherwise assist in conducting an efficient trial. Freeze also submitted an affidavit, describing the bailiff functions he performed at the judge's direction.

In opposing Freeze's claim of absolute immunity, Robinson submitted an affidavit alleging that he saw Freeze enter the jury room with a camera and heard him say, before the door closed, "Give me that watch he stole." Robinson also averred that he heard a juror call Freeze back into the jury room during deliberations because she had "another question." Though Freeze's affidavit did not refute Robinson's specific allegations, Freeze denied any unnecessary contact with the jurors or any discussion with them concerning the merits of the case or his opinions of the trial.

Relying on *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), the district court held that absolute immunity protects officials who are intimately associated with the judicial process or who act in accordance with a judge's direction. Finding that Freeze had performed normal, routine bailiff duties that were an integral part of the judicial process, the court concluded that Freeze was entitled to absolute quasi-judicial immunity and granted his motion for summary judgment. We review the grant of summary judgment de novo. *United States ex rel. Glass v. Medtronic, Inc.*, 957 F.2d 605, 607 (8th Cir.1992).

## II.

■ The absolute immunity inquiry must begin by noting the Supreme Court's presumption that qualified, rather than absolute, immunity is sufficient to protect government officials in the exercise of their duties. Accordingly, "the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Burns v. Reed*, 500 U.S. 478, ——, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547

(1991) (citations omitted). The issue of absolute immunity under § 1983 turns on whether the official historically enjoyed such immunity at common law plus a practical analysis of the official's functions in modern times. *See Harlow v. Fitzgerald*, 457 U.S. 800, 810–11, 102 S.Ct. 2727, 2734, 73 L.Ed.2d 396 (1982).

■ Judges performing judicial functions enjoy absolute immunity from § 1983 liability. "The doctrine of judicial immunity is supported by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability." *Antoine v. Byers & Anderson, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2167, 2171, 124 L.Ed.2d 391 (1993). Freeze seeks the benefit of this absolute judicial immunity. "When judicial immunity is extended to officials other than judges, it is because their judgments are functionally comparable to those of judges—that is, because they, too, exercise a discretionary judgment as a part of their function." *Id.* at ——, 113 S.Ct. at 2171 (citations and internal quotations omitted). In *Antoine*, decided after the district court's decision in this case, the Court held that court reporters are not entitled to absolute quasi-judicial immunity because "court reporters do not exercise the kind of judgment that is protected by the doctrine of judicial immunity." —— U.S. at ——, 113 S.Ct. at 2172.

We find some historical guidance as to the type of civil immunity bailiffs enjoyed for performing work during the course of a trial. Under English common law, back to at least the twelfth century, bailiffs were appointed by sheriffs and were accountable to sheriffs for their conduct. *See* Robert C. Palmer, *The County Courts of Medieval England: 1150–1350*, at 27–53 (1982). Those bailiffs, in addition to attending judges and juries, performed duties unassociated with trials, such as collecting fines and executing writs and warrants. *See id.; Black's Law Dictionary* 141 (6th ed. 1990) (defining "bailiffs of hundreds" and "high bailiff"). Bailiffs and other sheriff "underlings" generally were "liable at

law for unjust or inefficient conduct," and could be fined for incompetence. Palmer, *The County Courts of Medieval England* at 37. Because "there was no question of an old-fashioned officer like a sheriff or bailiff having held a hearing or made a formal finding," those officers were subject to collateral tort actions for their misconduct. John Dickinson, *Administrative Justice and the Supremacy of Law in the United States* 308 (1927). This suggests that at least a significant portion of the bailiff function is entitled to qualified rather than absolute immunity.

However, during the course of a trial, bailiffs often perform additional duties directly related to the judicial function and directed and controlled by the trial judge. Under early common law, nonjudicial officials enjoyed quasi-judicial immunity for the performance of judicial functions. *See* Floyd R. Mechem, *A Treatise on the Law of Public Offices and Officers* §§ 636–39 (Chicago, Callaghan 1890) (extensive list of officers enjoying quasi-judicial immunity); *see also* Thomas M. Cooley, *The Law of Torts* 409–11 (Chicago, Callaghan 1880) (same). The extension of immunity to these officials turned on the nature of the function performed, not on the officer's title. Mechem, *Law of Public Offices and Officers* § 638. Consistent with these common law precedents, we have extended absolute immunity to officials for " 'acts they are specifically required to do under court order or at a judge's direction.' " *Rogers v. Bruntrager,* 841 F.2d 853, 856 (8th Cir.1988) (holding court clerk absolutely immune for issuing arrest warrant at judge's direction) (quoted case omitted); *see also Patterson v. Von Riesen,* 999 F.2d 1235, 1240 (8th Cir.1993); *McCaw v. Winter,* 745 F.2d 533, 534 (8th Cir.1984) (per curiam).

■ Based upon both an historical analysis of bailiff immunity, and a functional analysis of the bailiff's duties, we conclude that the question of absolute immunity for bailiffs, like that of prosecutors,[1] turns on whether the specific conduct of the bailiff at issue was quasi-judicial in nature.

■ In this case, Freeze submitted an affidavit from the judge who presided at Robinson's trial averring that the judge had delegated certain discretionary judicial powers to Freeze, including the task of ensuring the jury's sequestration and of monitoring proper jury functioning during its deliberations. When performing tasks of this nature, Freeze was entitled to absolute quasi-judicial immunity. However, the record does not disclose whether all of Freeze's challenged conduct was done under the trial judge's authority and direction. For example, the allegation that Freeze photographed and removed evidence from the jury room suggests conduct that is not part of the normal judicially-delegated task of monitoring the jury's deliberations. Freeze would enjoy only qualified immunity for those actions unless they were specifically ordered by the trial judge and related to the judicial function.

The summary judgment record and decision in this case were developed without the benefit of the Supreme Court's decision in *Antoine.* The issue of absolute immunity should be considered in the first instance by the district court on a proper record. Accordingly, the judgment of the district court is reversed and the case is remanded for further proceedings in light of *Antoine* and this opinion. Robinson's motion for default judgment is denied.

---

1. *See Buckley v. Fitzsimmons,* —— U.S. ——, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993); *Latimore v.* *Widseth,* 7 F.3d 709 (8th Cir.1993) (en banc).