United States Court of Appeals
**FOR THE EIGHTH CIRCUIT**
No. 97-1479WA

| | | |
|---|---|---|
| Paula S. Martin, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Jeffrey Michael Hendren, Individually | * | |
| and in his Official Capacity; | * | |
| | * | Appeal from the United States |
| Defendant-Appellant, | * | District Court for the Western |
| | * | District of Arkansas. |
| Terry M. Luker, Individually and in his | * | |
| Official Capacity; John R. Gibbs, | * | |
| Individually and in his Official Capacity;* | | |
| City of Gravette, Arkansas, A Municipal | * | |
| Corporation, | * | |
| | * | |
| Defendants. | * | |

_____

Submitted: September 9, 1997
Filed: October 14, 1997

_____

Before FAGG, LAY, and LOKEN, Circuit Judges.

_____

FAGG, Circuit Judge.

Asserting absolute quasi-judicial immunity, Officer Jeffrey Michael Hendren appeals the denial of his motion for summary judgment in this 42 U.S.C. § 1983

excessive force lawsuit brought by Paula S. Martin. The magistrate judge rejected Hendren's immunity defense. We reverse.

We recite the facts in the light most favorable to Martin. Martin's son was before the Gravette, Arkansas municipal court on a traffic charge. When Martin approached the bench unasked, the judge told her to sit down, twice. She refused, and the judge sent for a police officer. As Officer Hendren entered the courtroom, the judge ordered him to remove Martin. Some struggle ensued, during which Martin was struck in the face by Hendren's arm or elbow. Holding Martin in contempt, the judge ordered Hendren to "put the cuffs on her." Martin tried to push Hendren away. Hendren then flipped Martin face down onto the floor, handcuffed her, pulled her to her feet by the handcuffs and her hair, and led her out of court. Martin required ultrasound treatment for an injured shoulder.

After this incident, Martin brought suit under 42 U.S.C. § 1983 (1994), the Fourteenth Amendment, and state law, claiming excessive force and battery, and naming as defendants Hendren, John R. Gibbs, Hendren's supervisor Terry M. Luker, and the City of Gravette. After the district court dismissed Gibbs as a misjoined party and transferred the case to the magistrate judge with the parties' consent, see 28 U.S.C. § 636(c)(1) (1994), the remaining defendants moved for judgment on the pleadings on Martin's Fourteenth Amendment claim and summary judgment on the rest. The magistrate judge granted the City's and Luker's motions, but denied Hendren's, concluding Hendren is not entitled to absolute quasi-judicial immunity. An order denying absolute immunity is immediately appealable, and we review the denial of absolute immunity de novo. See Duty v. City of Springdale, Ark., 42 F.3d 460, 462 (8th Cir. 1994) (per curiam).

"Absolute quasi-judicial immunity derives from absolute judicial immunity." Roland v. Phillips, 19 F.3d 552, 555 (11th Cir. 1994). Judges are absolutely immune from suit for money damages when they act in their judicial capacity, unless their

actions are "taken in the complete absence of all jurisdiction." Duty, 42 F.3d at 462. A judge's absolute immunity extends to public officials for "'acts they are specifically required to do under court order or at a judge's direction.'" Robinson v. Freeze, 15 F.3d 107, 109 (8th Cir. 1994) (quoting Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir. 1988)). Like other officials, bailiffs enjoy absolute quasi-judicial immunity for actions "specifically ordered by the trial judge and related to the judicial function." Id. In subduing Martin, Hendren was acting as a de facto bailiff, obeying specific judicial commands to restore order in the courtroom. Those orders unquestionably related to the judicial function. See Mireles v. Waco, 502 U.S. 9, 12-13 (1991) (per curiam); Terry v. State, 796 S.W.2d 332, 335 (Ark. 1990). Hendren is thus entitled to absolute quasi-judicial immunity from § 1983 liability for carrying out the judge's orders to handcuff Martin and remove her from the courtroom.

Martin argues that even if Hendren is absolutely immune from liability for implementing the judge's orders, Hendren ceased to act in a quasi-judicial capacity when he carried out those orders using excessive force. See Martin v. Board of County Comm'rs, 909 F.2d 402, 404-05 (10th Cir. 1990) (per curiam) (holding officers not absolutely immune for using excessive force in executing arrest warrant). After Martin was decided, however, the Supreme Court held a judge's order to use excessive force, issued in the judge's judicial capacity, was a judicial act for which the judge retained absolute immunity. See Mireles, 502 U.S. at 12-13. The Court emphasized that the nature of the function being performed, not the particular act itself, controls the judicial immunity inquiry. See id. The Court rejected the idea that the impropriety of a judge's act strips the judge of immunity, reasoning that "[i]f judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" Id. (quoting Stump v. Sparkman, 435 U.S. 349, 356 (1978) (ellipsis in Mireles)). Although the Mireles Court did not address quasi-judicial immunity, we find the Court's reasoning persuasive in this context. Absolute quasi-judicial immunity would afford only illusory protection if it were lost the moment an officer acted improperly. Further, the officers in Martin were executing

an arrest warrant away from the issuing judge's courtroom, see Martin, 909 F.2d at 403-04, but Hendren was carrying out a judicial command in the judge's courtroom and presence. Because judges frequently encounter disruptive individuals in their courtrooms, exposing bailiffs and other court security officers to potential liability for acting on a judge's courtroom orders could breed a dangerous, even fatal, hesitation. "For the criminal justice system to function, . . . courts must be able to assume their orders will be enforced." Patterson v. Von Riesen, 999 F.2d 1235, 1241 (8th Cir. 1993). Under the circumstances presented here, we conclude Hendren is entitled to absolute quasi-judicial immunity, and we need not speculate about hypothetical situations testing the limits of our holding.

We reverse the magistrate judge's order and remand with directions to grant Hendren summary judgment on Martin's § 1983 claim on the ground of absolute quasi-judicial immunity. Because no federal claims remain in this lawsuit, we also direct the magistrate judge to dismiss without prejudice Martin's state-law claim against Hendren for battery. See Ivy v. Kimbrough, 115 F.3d 550, 552-53 (8th Cir. 1997).

LAY, Circuit Judge, dissenting.

I respectfully dissent.

The unprecedented holding adopted by the court today represents a radical departure from the traditional limits of absolute immunity as it has been applied to quasi-judicial acts.

This court recognized in Robinson v. Freeze, 15 F.3d 107 (8th Cir. 1994), that the protection of absolute immunity is extraordinary and strictly limited in its application outside of direct judicial or prosecutorial actions. As Judge Loken stated in Robinson, "[t]he absolute immunity inquiry must begin by noting the Supreme Court's presumption that qualified, rather than absolute, immunity is sufficient to

protect government officials in the exercise of their duties." Id. at 108 (emphasis added). The Supreme Court has stated:

> We have consistently "emphasized that the official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties. We have been quite sparing in our recognition of absolute immunity, and have refused to extend it any further than its justification would warrant."

Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 433 n.4 (1993) (quoting Burns v. Reed, 500 U.S. 478, 486-87 (1991)).

Qualified immunity extends to "government officials performing discretionary functions . . . insofar as their conduct does not violate clearly established . . . rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action." Anderson v. Creighton, 483 U.S. 635, 639 (1987) (internal citation omitted).

The reasons for limiting absolute immunity are quite evident. The doctrine of absolute judicial immunity arose "because it was in the public interest to have judges who were at liberty to exercise their independent judgment about the merits of a case" without fear of civil action from dissatisfied litigants. Dennis v. Sparks, 449 U.S. 24, 31 (1980); see also Ashelman v. Pope, 793 F.2d 1072, 1078 (9th Cir. 1986) (stating the primary purpose of absolute immunity is "to ensure independent and disinterested judicial and prosecutorial decision making"). However, the Supreme Court has recognized that the doctrine also can result in "unfairness and injustice" when a litigant with an otherwise valid complaint against an official is left without any legal recourse.

Waco v. Mireles, 502 U.S. 9, 10 (1991) (per curiam); see also Briscoe v. LaHue, 460 U.S. 325, 345 (1983).  For this reason, courts, including this one, have been extremely careful  in deciding how far beyond judges and prosecutors absolute immunity should be extended.  See, e.g.,  Robinson, 15 F.3d 107; Antoine, 508 U.S. 429 (absolute immunity not extended to court reporters).

The issue of granting absolute immunity in a  § 1983 action turns on whether the official enjoyed such immunity at common law, plus a practical analysis of the official's functions in modern times. Robinson, 15 F.3d at 108 (relying on Harlow, 457 U.S. at 810-11).   In regard to the specific question of whether the actions of a bailiff should be granted absolute immunity, this court in Robinson, after analyzing the historical background and  the function of the office today,  found that "at least a significant  portion of the bailiff function is entitled to qualified rather than absolute immunity." Id. at 109 (emphasis added).

This court now applies the Supreme Court's analysis in Mireles, dealing with absolute immunity for the actions of a judge, to the  area of quasi-judicial actions. Using the language of Mireles, the majority argues that the relevant inquiry should be the nature of the function being performed, not the particular act itself.  However, this analysis overlooks that Mireles directs that the facts of the incident must be evaluated in relation to the general function of the officer.  502 U.S. at 13.  The majority reasons that the nature of Hendren's actions was quasi-judicial because it was taken at the direction of a judge, and therefore is entitled to absolute immunity.  This analysis points up a basic factual fallacy of the majority opinion: the assumption that the judge instructed bailiff to use excessive force.   The record is barren of such suggestion.

The added flaw in this reasoning is that the Supreme Court in  Mireles sought to protect the first-tier, decision-making function of a judge.  As noted above, this protection of the judicial decision-making process lies at the core of the  doctrine of absolute immunity.   Clearly, it is within the traditional function of the judge to direct

that there be order in the courtroom. However, it is not the nature of the judicial function that a judge leave the bench and engage a disruptive witness, party, or lawyer by physical force to achieve his or her order. Such function lies within the executive branch, and is characteristic of the function of a law enforcement action in which only qualified immunity is traditionally available. Cf. Forrester v. White, 484 U.S. 219 (1988) (judge performing administrative duties does not have absolute judicial immunity).

Under the majority's reasoning, if a judge orders a bailiff to remove a litigant from the courtroom, and the bailiff decides that the most expeditious way to accomplish this order is to bash the litigant in the head with a baseball bat, the bailiff would enjoy absolute immunity. This is not the type of action the doctrine of absolute immunity is designed to protect. During oral argument, Hendren's attorney suggested that if a courtroom official employs lethal force, then the complete protection of absolute immunity should be lifted and the fact-based inquiry of qualified immunity should be applied. In other words, the argument runs that only when force becomes too excessive should the reasonableness of the bailiff's actions be examined. There exists no support for this distinction in case law, and no logical reason why the same standard of objective reasonableness should not be used to assess the actions of a courtroom officer when the result is a broken arm or a bruised rib rather than death.

If this court had applied the majority's newly adopted analysis in the Robinson case, it would have yielded similarly inequitable results. In Robinson, bailiff Bobby Freeze was ordered by the judge to sequester the jury. He was accused of denying the plaintiff Robinson a fair trial when he allegedly made derogatory comments about Robinson to the jury, referred to evidence as "that watch [Robinson] stole," took photographs of the evidence, and removed evidence from the jury room. Robinson, 15 F.3d at 107-08. Applying the majority's analysis to Freeze's actions would have shielded the bailiff from any liability because the nature of his actions -- overseeing sequestration of the jury -- was quasi-judicial and taken at the direction of the presiding

judge. However, this is <u>not</u> the conclusion the court reached. The decision states: "[T]he record does not disclose whether all of Freeze's challenged conduct was done under the trial judge's authority and direction . . . . Freeze would enjoy only qualified immunity for those actions unless they were <u>specifically</u> ordered by the trial judge and related to the judicial function." <u>Id</u>. at 109 ( emphasis added). In the present case, the record is void of any direction by the judge that the bailiff use excessive force.[1] As in <u>Robinson</u>, there is no evidence that Hendren's "challenged conduct (use of excessive force) was done under the trial judge's authority and direction." In this sense, use of excessive force by a bailiff must be seen as an act that goes outside the bounds of his or her jurisdiction, <u>see</u> <u>Mireles</u>, 502 U.S. at 12; <u>Sparkman</u>, 435 U.S. at 356-57, and therefore subjected to more limited protection.

This is the same conclusion reached by the Tenth Circuit in <u>Martin v. Board of County Comm'rs</u>, 909 F.2d 402 (10th Cir. 1990). In <u>Martin</u>, a § 1983 action was brought against sheriff's deputies alleging excessive use of force during the execution of an arrest warrant. The deputies claimed they were entitled to "absolute 'quasi-judicial' immunity" because they were acting in accordance with a direct judicial order (in this case, a properly issued arrest warrant). <u>Id</u>. at 404. The Tenth Circuit ruled: "While the immunity granted . . . protects defendants from liability for the actual arrest, it does not empower them to execute the arrest with excessive force . . . " <u>Id</u>. The majority feels the <u>Martin</u> case was superseded by the Supreme Court's subsequent decision in <u>Mireles</u>. However, <u>Mireles</u> related only to the immunity of the judge; the

---

[1]Inquiry as to whether officers are entitled to qualified immunity for use of excessive force is the same inquiry on the merits of the excessive force claim. <u>See</u> <u>Alexander v. County of Los Angeles</u>, 64 F.3d 1315, 1322 (9th Cir. 1995); <u>Scott v. Henrich</u>, 39 F.3d 912, 914 (9th Cir. 1994), <u>cert. denied</u>, 515 U.S. 1159 (1995); <u>Street v. Parham</u>, 929 F.2d 537, 541 n.2 (10th Cir. 1991).

police officers did not appeal and were not before the Supreme Court.  They did not raise the defense of absolute immunity.[2]

The Supreme Court has made clear that absolute immunity is unnecessary to protect the public interest in encouraging the vigorous exercise of official authority, because qualified immunity shields officials from liability for good-faith mistakes.  See Hanrahan v. Hampton, 446 U.S. 754,  764 (1980) (Powell, J., dissenting); Butz v. Economou, 438 U.S. 478, 506 (1978); Hunter v. Bryant, 502 U.S. 224, 229 (1991).  If the actions of an officer are objectively reasonable, then the case may be disposed of at the summary judgment phase and the official will be protected under the rules of qualified immunity.   This is no less protection than is afforded other government officials, Behrens v. Pelletier, ___ U.S.___, 116 S.Ct. 834 (1996), state and federal law enforcement officers, Anderson, 483 U.S. 635, and secret service agents, Hunter, 502 U.S. 224.

When a judicial order is given to a courtroom official, the judge presumes that the order will be carried out in a lawful manner that does not violate the constitutional rights of the trial participants.  When an allegation arises that such is not the case, justice demands that no more than qualified immunity should apply, so that the facts of

---

[2]In Mireles, a public defender filed a § 1983 action against a California Superior Court judge, after the judge, angered by the attorney's failure to promptly appear at the judge's morning calendar, ordered police officers "to forcibly and with excessive force seize and bring [the] plaintiff into his courtroom."  Mireles, 502 U.S. at 10.  The officers then allegedly seized the public defender "‹and remove[d] him backwards' from another courtroom where he was waiting to appear, cursed him, and called him ‹vulgar and offensive names,' then ‹without necessity slammed' him through the doors and swinging gates into Judge Mireles' courtroom."  Id. (internal citations omitted).  At the time the Ninth Circuit issued its opinion in the Mireles case,  the claim against the police officers was still pending in the district court.  See Waco v. Beltad, 934 F.2d 214 (9th Cir. 1991).

the incident may be evaluated in relation to the nature of the traditional function of the officer.

I, therefore, dissent. I would affirm the magistrate judge's denial of the motion for summary judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.