BAUER, Circuit Judge,
dissenting.
I respectfully dissent. The majority finds Martin v. Board of County Commissioners, 909 F.2d 402 (10th Cir.1990) “more persuasive” than Martin v. Hendren, 127 F.3d 720 (8th Cir.1997). The tenth circuit case involved police conduct in serving a bench warrant; the eighth circuit case is virtually on all fours with the instant case.
I have no quarrel with the result reached by the tenth circuit case; it differs not at all from the run-of-the-mill arrests made pursuant to any judicial warrant and, since the arrest takes place away from the courtroom and away from the watchful eye of the judicial officer who issued the warrant, the conduct of the police is more likely to require a closer scrutiny. Nor is the immediate service of the warrant necessary to provide the court with the proper decorum needed to continue the work of the court.
The Martin v. Hendren case, like ours, however involves police officers under the immediate direction and supervision of a judge, following the judge’s orders to restore or maintain order in the court instanter, doing precisely what they are sworn to do. Indeed, it is to do this job of maintaining order at the bidding of the judge that is the very reason they are present in the courtroom.
In formulating the finding granting these officers quasi-immunity, it is difficult to improve on the language of the majority opinion of the eighth circuit:
“Absolute quasi-judicial immunity derives from absolute judicial immunity.” Roland v. Phillips, 19 F.3d 552, 555 (11th Cir.1994). Judges are absolutely immune from suit for money damages when they act in their judicial capacity, unless their actions are “taken in the complete absence of all jurisdiction.” Duty [v. City of Springdale, Ark., 42 F.3d 460 (8th Cir.1994)]. A judge’s absolute immunity extends to public officials for “ ‘acts they are specifically required to do under court order or at a judge’s direction.’ ” Robinson v. Freeze, 15 F.3d 107, 109 (8th Cir.1994) (quoting Rogers v. Bruntrager, 841 F.2d 853, 856 (8th Cir.1988)). Like other officials, bailiffs enjoy absolute quasi-judicial immunity for actions “specifically ordered by the trial judge and related to the judicial function.” Id. In subduing Martin, Hendren was acting as a de facto bailiff, obeying specific judicial commands to restore order in the courtroom. Those orders unquestionably related to the judicial function. See Mireles v. Waco, 502 U.S. 9, 12-13, 112 S.Ct. 286, 288-89, 116 L.Ed.2d 9 (1991) (per curiam); Terry v. State, 303 Ark. 270, 796 S.W.2d 332, 335 (1990). Hendren is thus entitled to absolute quasi-judicial immunity from § 1983 liability for carrying out the *444 judge’s orders to handcuff Martin and remove her from the courtroom.
Martin argues that even if Hendren is absolutely immune from liability for implementing the judge’s orders, Hendren ceased to act in a quasi-judicial capacity when he carried out those orders using excessive force. See Martin v. Board of County Comm’rs, 909 F.2d 402, 404-05 (10th Cir.1990) (per curiam) (holding officers not absolutely immune for using excessive force in executing arrest warrant). After Martin was decided, however, the Supreme Court held a judge’s order to use excessive force, issued in the judge’s judicial capacity, was a judicial act for which the judge retained absolute immunity. See Mireles, 502 U.S. at 12-13, 112 S.Ct. at 288-89. The Court emphasized that the nature of the function being performed, not the particular act itself, controls the judicial immunity inquiry. See id. The Court rejected the idea that the impropriety of a judge’s act strips the judge of immunity, reasoning that “[i]f judicial immunity means anything, it means that a judge ‘will not be deprived of immunity because the action he took was in error ... or was in excess of his authority.’ ” Id. (quoting Stump v. Sparkman, 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978) (ellipsis in Míreles)). Although the Míreles Court did not address quasi-judicial immunity, we find the Court’s reasoning persuasive in this context. Absolute quasi-judicial immunity would afford only illusory protection if it were lost the moment an officer acted improperly. Further, the officers in Martin were executing an arrest warrant away from the issuing judge’s courtroom, see Martin, 909 F.2d at 403-04, but Hendren was carrying out a judicial command in the judge’s courtroom and presence. Because judges frequently encounter disruptive individuals in their courtrooms, exposing bailiffs and other court security officers to potential liability for acting on a judge’s courtroom orders could breed a dangerous, even fatal, hesitation. “For the criminal justice system to function, ... courts must be able to assume their orders will be enforced.” Patterson v. Von Riesen, 999 F.2d 1235, 1241 (8th Cir.1993).
Martin v. Hendren, 127 F.3d 720, at 721-22.
As to the horrific scenario envisioned by Judge Lay’s dissent, the court dryly (and properly!) responded “... we need not speculate about hypothetical situations testing the limits of our holding.”
A decision reversing the trial court in the instant case is, in my opinion, both logical and necessary, if courtroom decorum is to be preserved at all. To suggest that the judge is absolutely immune from liability for requiring the bailiffs to take a person into custody for refusing the court’s direction while exposing the bailiffs to liability has implications that go beyond the present case. A probable response (if it could be done without the bailiff being held in contempt) would be to suggest that the judge, cloaked with his or her immunity, step down and preserve order himself.
I continue to have sufficient faith in the judges who serve our courts to believe that they will oversee the bailiff or bailiffs who carry out their orders in the courtroom and make sure, by direction or otherwise, that the orders are properly carried out with the reasonable amount of force that the individual cases require.
I would reverse the district court and hold the bailiffs to be cloaked with immunity when carrying out the orders of the court relating to the conduct of court proceedings themselves. It follows then, that I would reverse the order denying the *445 sheriffs motion to dismiss. I would join the majority in reversing the order denying the deputies’ motion to dismiss the state law claims.