United States Court of Appeals
For the Eighth Circuit

_____

No. 18-3450
_____

Henry Hamilton

*Plaintiff - Appellant*

v.

City of Hayti, Missouri, et al.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: September 24, 2019
Filed: January 28, 2020

_____

Before LOKEN, COLLOTON, and KOBES, Circuit Judges.

_____

LOKEN, Circuit Judge.

On July 28, 2011, Amy Leeann Inman, manager of the Cleveland Apartments in Hayti, a small town in southeastern Missouri, called the police to report that Henry Hamilton "began cursing" and "threw an ink pen" at her while applying for public housing. Glenda Overbey, the police department receptionist and Inman's mother, radioed the two officers on duty. Officer David Inman, Inman's boyfriend and now her husband ("Officer Inman"), responded. Inman prepared a "notice against

trespass" barring Hamilton from entering the apartment complex due to "assault on management" and signed a complaint at the Hayti Police station, witnessed by Overbey, charging Hamilton with Peace Disturbance and Assault.

The next day, a police officer in a neighboring town arrested Hamilton for "eluding a police officer." Officer Inman was dispatched and served Inman's notice against trespass. Hamilton was taken to the Pemiscot County Jail. Overbey, who also served as clerk and administrator for the Hayti municipal court, issued a warrant commanding that Hamilton be arrested and brought before the municipal court on the pending charges in Inman's complaint. Overbey signed the warrant for Municipal Judge Calvin Ragland, using a rubber stamp he provided, and faxed it to the County Jail. The warrant set as "conditions of release" the posting of a cash bond in the amount of $1,022.50. Hamilton did not post the cash bond. On August 4, seven days after he was detained under the warrant, Hamilton made his initial appearance before Judge Ragland. Hayti City Attorney Lawrence Dorroh signed an information prepared by Overbey and agreed to dismiss the assault charge. Hamilton pleaded guilty to the peace disturbance charge. Judge Ragland sentenced Hamilton to time served and ordered his release.

Hamilton filed this action against the City of Hayti, Overbey, Judge Ragland, and Inman. Count I of the complaint sought damages and injunctive and declaratory relief under 42 U.S.C. § 1983, alleging unlawful arrest, detention, and prosecution, and the setting of an excessive cash-only bond that Hamilton was unable to pay due to indigency, in violation of his rights under the Fourth, Eighth, and Fourteenth Amendments. Count II alleged violations of the Missouri Constitution, a Missouri statute, and Missouri Supreme Court Rules. Count III alleged a civil conspiracy to arrest, detain, and prosecute Hamilton in violation of his statutory and constitutional rights.

The district court[1] dismissed all claims against Judge Ragland and Overbey based on judicial and quasi-judicial immunity. The court dismissed the state law claims against Hayti and Inman because the City had sovereign immunity and Inman, a private actor, could not be sued for violations of relevant Missouri law. Following discovery, the court granted summary judgment dismissing the remaining § 1983 damage claims, concluding (i) Hayti was not liable under Monell v. Department of Social Services, 436 U.S. 658 (1978), because the alleged unconstitutional bond practice was not a final policy decision; and (ii) Inman was not liable under § 1983 because Hamilton failed to prove a "meeting of the minds" with state actors. In a separate order, the court dismissed the claims for injunctive and declaratory relief as moot because Missouri has amended its laws pertaining to bail in municipal courts.

Hamilton appeals, challenging the dismissal of his § 1983 damages claims against Judge Ragland, Overbey, Inman, and the City of Hayti. Reviewing the dismissal and summary judgment orders *de novo*, we affirm. Mick v. Raines, 883 F.3d 1075, 1078-79 (8th Cir. 2018) (standard of review).

**I.**

Hamilton's complaint alleged that Judge Ragland is liable in damages for his unconstitutional actions in allowing Overbey to issue arrest warrants and set bonds using his signature stamp, and in setting a schedule requiring cash-only bonds without regard to the arrested person's ability to pay. On appeal, Hamilton argues the district court erred in dismissing these claims based on Judge Ragland's judicial immunity.

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

-3-

Judicial immunity is immunity from suit. It is grounded in a "general principle of the highest importance," that "a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." Mireles v. Waco, 502 U.S. 9, 10 (1991), quoting Bradley v. Fisher, 80 U.S. 335, 347 (1871). The doctrine's broad protection yields in two circumstances: "First, a judge is not immune from liability for nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 11-12 (citations omitted). Allegations of malice or corruption do not defeat judicial immunity. Stump v. Sparkman, 435 U.S. 349, 355-56 (1978).

Municipal judges in Missouri "have original jurisdiction to hear and determine all violations against the ordinances of the municipality." Mo. Rev. Stat. § 479.020(1). They are "municipal judges of the circuit court and shall be divisions of the circuit court of the circuit in which the municipality . . . is located." Id. at § 479.020(5); see Mo. Const. Art. V, § 1 ("The judicial power of the state shall be vested in . . . circuit courts"); Granda v. City of St. Louis, 472 F.3d 565, 569 (8th Cir. 2007).

**A. The Arrest Warrant.** There is no question that Missouri law authorized Municipal Judge Ragland to issue arrest warrants. See Mo. Rev. Stat. § 479.100. Missouri's Supreme Court Rules authorize a municipal judge to issue a warrant "[w]hen an information charging the commission of an ordinance violation and a statement of probable cause are filed," and the court finds "reasonable grounds . . . to believe that the defendant will not appear." Rule 37.43 (2003). Here, no information had been filed when the warrant to arrest Hamilton issued. Therefore, Hamilton argues, without citation to relevant authority, Judge Ragland's issuance of the warrant was a non-judicial act that invaded the prosecutor's exclusive jurisdiction to commence a prosecution.

-4-

This contention is without merit. "To implement the Fourth Amendment's protection against unfounded invasions of liberty and privacy . . . the existence of probable cause [must] be decided by a neutral and detached magistrate whenever possible." Gerstein v. Pugh, 420 U.S. 103, 112 (1975). Prior to a suspect's arrest, an arrest warrant based upon judicial review of probable cause is preferable but not required. But when the suspect is in custody and the question is whether his liberty should be restrained pending trial, "probable cause for the issuance of an arrest warrant must be determined by [a neutral and detached magistrate] independent of police and prosecution." Id. at 118; see In re Harris, 593 S.W.2d 517, 517 (Mo. banc 1979) (invalidating a Supreme Court Rule that allowed circuit court clerks to issue warrants "upon complaint made by the prosecuting attorney").

Here, when the warrant issued, Hamilton was in custody on another charge. Inman's complaint witnessed by Overbey authorized his prosecution for violation of the municipal ordinances cited. See Mo. Rev. Stat. § 479.090. Without question, then, issuance of an arrest warrant authorizing his detention pending trial was a judicial act within Judge Ragland's jurisdiction as a municipal court judge. For judicial immunity to apply, "the relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself'"; we must "look to the particular act's relation to a general function normally performed by a judge." Mireles, 502 U.S. at 13. Given Judge Ragland's statutory authority to issue warrants, even if the warrant to arrest Hamilton was improper under the circumstances, it was an act in "excess of jurisdiction" that did not deprive him of judicial immunity. See Stump, 435 U.S. at 356-59; Duty v. City of Springdale, Ark., 42 F.3d 460, 462-63 (8th Cir. 1994); Coleman v. Watt, 40 F.3d 255, 259 (8th Cir. 1994). Judicial immunity extends even to "the commission of grave procedural errors." Stump, 435 U.S. at 359.

In this case, the warrant was not issued by Judge Ragland but by court clerk Overbey exercising authority delegated by Judge Ragland, including use of his signature stamp. This delegation likely made the warrant invalid because Overbey

was not a neutral and detached magistrate who could make a constitutionally proper probable cause finding under Gerstein v. Pugh and In re Harris. But Overbey exercised authority delegated by Judge Ragland to perform the judicial act of issuing an arrest warrant. In Ledbetter v. City of Topeka, Kan., a person arrested and detained for failing to appear to answer a municipal violation brought a § 1983 damage action against the municipal judge who did not personally review or sign the arrest warrant. 318 F.3d 1183, 1186 (10th Cir. 2003). A court clerk had issued the warrant stamped with the judge's signature. The Tenth Circuit affirmed dismissal of this claim because the judge was entitled to absolute immunity. "[E]ven assuming that his acts violated Kansas law, Judge Roach did not act 'in the clear absence of all jurisdiction.'" Id. at 1189, quoting Stump, 435 U.S. at 356; accord Newton v. Buckley, No. 96-4202, 1997 WL 642085, at *3 (10th Cir. Oct. 17, 1997) (granting judicial immunity for incorrectly issuing a bench warrant for failure to appear). We agree with this reasoning and therefore conclude that Judge Ragland is entitled to absolute judicial immunity from Hamilton's arrest and detention damage claims based on an invalid warrant issued by Overbey.

**B. The Bond Schedule.** Hamilton also argues that Judge Ragland is liable in damages because the arrest warrant required him to post a cash-only bond in an amount established by Judge Ragland's unconstitutional bond schedule. At the time of Hamilton's arrest, a person arrested for violating a City of Hayti ordinance was taken to the Hayti Police Department for processing and then, if the offense required posting a bond, would go to jail until the bond was posted. In September 2010, Judge Ragland issued an Order "author[izing] the court clerk and police officers to collect the following fines and cost bonds for ordinance and traffic violations." The schedule listed the amount of the fine or bond for each ordinance up to a maximum of $500. Every bond had to be paid in cash, not by a professional bondsman.

If the arrested person wished to plead guilty without a court appearance, the police department or court clerk collected the amount listed on the bond as the fine

and court costs, and the case was closed. If he did not plead guilty, he could avoid further pretrial detention by paying the amount of the bond; otherwise, he was held in jail until his initial appearance in municipal court. If he paid the bond and failed to appear in court, the bond schedule stated that "the fine will be doubled and a warrant will be issued." Typically, Overbey and Judge Ragland testified, the bond payment was forfeited as satisfaction of the fine.

In this case, Hamilton was detained at the County Jail after his arrest on a different charge, with the Hayti ordinance violations charged in Inman's complaint pending. In this relatively unusual situation, Judge Ragland and Overbey both testified, Overbey would advise Judge Ragland that the suspect was in custody and Judge Ragland would decide whether to issue an arrest warrant to detain the suspect until his municipal court appearance. However, neither recalled discussing Hamilton's detention at the County Jail before Overbey issued a warrant for Hamilton's arrest using Judge Ragland's signature stamp. It was Judge Ragland's practice to increase the fine to the maximum $500 for a municipal offense involving breach of the peace in a place of business. Therefore, in issuing the arrest warrant, Overbey set Hamilton's bond at $1,022.50, $500 for each of the two offenses at the Cleveland Apartments plus court costs.

Hamilton alleges that Judge Ragland's "established practice" denied indigent arrestees their constitutional right not to be imprisoned prior to trial solely because they cannot afford to pay the bond to secure their release. When the § 1983 plaintiff is seeking injunctive and declaratory relief, this can be a serious issue. See generally ODonnell v. Harris Cty., 892 F.3d 147 (5th Cir. 2018); Dixon v. City of St. Louis, No. 4:19-CV-0112, 2019 WL 2437026 (E.D. Mo. June 11, 2019), appeal pending, 8th Cir. Nos. 19-2251 and 19-2254. However, these claims have been dismissed as moot in this case; only Hamilton's damage claims are at issue. The district court concluded that Judge Ragland is entitled to absolute judicial immunity because "the imposition

of conditions of release [including bail bonds] is subject to the discretion of the judge," citing Mo. Rev. Stat. § 544.455. We agree.

Municipal judges "shall have power and jurisdiction . . . to issue process for the apprehension of persons charged with criminal offenses, and hold them to bail." Mo. Rev. Stat. § 542.020. In John Chism Bail Bonds, Inc. v. Pennington, a § 1983 action against Arkansas judges who "announced in a general administrative order that the County's courts would no longer accept cash or professional bonds," the district court held that the judges were entitled to judicial immunity in setting the county's bond policy. 411 F. App'x 927, 929 (8th Cir. 2011), aff'g 656 F. Supp. 2d 929, 934 (E.D. Ark. 2009). On appeal, we held that the sheriff and jail administrator were entitled to quasi-judicial immunity because they "perform[ed] certain delegated judicial powers" in requiring a sheriff's bond after a county judge determined the amount of the bond. 411 F. App'x at 930. These authorities confirm that Judge Ragland's practice of setting a bond schedule conditioning the pretrial release of persons accused of municipal ordinance violations was a judicial act within his jurisdiction to which judicial immunity attaches.

## II.

Hamilton further argues the district court erred in dismissing his damage claims against court clerk Overbey for issuing an invalid arrest warrant that included an unconstitutional cash bond requirement. The court concluded that Overbey is entitled to quasi-judicial immunity. This doctrine extends judicial immunity "to officials other than judges . . . because their judgments are functionally comparable to those of judges -- that is, because they, too, exercise a discretionary judgment as a part of their function." Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993) (quotations omitted). Due to the presumption "that qualified, rather than absolute, immunity is sufficient to protect government officials in the exercise of their duties . . . the official seeking absolute immunity bears the burden of showing that such

immunity is justified for the function in question." <u>Robinson v. Freeze</u>, 15 F.3d 107, 108 (8th Cir. 1994) (quotation omitted). The issue turns on "whether the official historically enjoyed such immunity at common law plus a practical analysis of the official's functions in modern times." <u>Id.</u>

For court clerks, absolute immunity has been extended to acts that are discretionary, taken at the direction of a judge, or taken according to court rules. <u>See</u> <u>Antoine</u>, 508 U.S. at 436; <u>Robinson</u>, 15 F.3d at 109. Here, even assuming that Judge Ragland did not direct Overbey to issue the warrant to arrest Hamilton, it is undisputed that Judge Ragland authorized Overbey to use her discretion to issue and set warrants with bond conditions. In similar situations, we have extended quasi-judicial immunity to court clerks. <u>See</u> <u>Boyer v. Cty. of Washington</u>, 971 F.2d 100, 102 (8th Cir. 1992) (clerk entitled to quasi-judicial immunity for signing and issuing an invalid arrest warrant, regardless of whether judge instructed her to do so, because the acts were "integral parts of the criminal judicial process"), <u>cert. denied. sub nom.</u> <u>Boyer v. DeClue</u>, 508 U.S. 974 (1993); <u>Rogers v. Bruntrager</u>, 841 F.2d 853, 856 (8th Cir. 1988) (clerk entitled to quasi-judicial immunity for issuing an arrest warrant at the direction of a judge); <u>compare</u> <u>Geitz v. Overall</u>, 62 F. App'x 744, 746 (8th Cir. 2003) (grant of immunity reversed where clerks' acts were ministerial, not discretionary, and not pursuant to court rules or instructions).

Hamilton argues that Overbey is not entitled to quasi-judicial immunity because both she and Judge Ragland lacked authority to issue a warrant under the circumstances. We rejected that argument in <u>Martin v. Hendren</u> because "quasi-judicial immunity would afford only illusory protection if it were lost the moment an officer acted improperly." 127 F.3d 720, 722 (8th Cir. 1997). Instead, we applied the Supreme Court's test for determining the parameters of judicial immunity, which emphasizes "the nature of the function being performed, not the particular act itself." <u>Id.</u>, citing <u>Mireles</u>, 502 U.S. at 12-13. Applying that test here, the district court

-9-

correctly concluded that Overbey is entitled to quasi-judicial immunity for her challenged actions.

## III.

Hamilton further appeals the dismissal of his § 1983 damage claim against the City of Hayti because Judge Ragland's "unconstitutional bond practice is fairly attributable to the City of Hayti." He argues that bond practices adopted by Judge Ragland, an elected city official, violated the Eighth and Fourteenth Amendments because indigent defendants "received jail sentences simply because of their lack of financial resources and inability to pay." The district court dismissed this claim because Judge Ragland's decision to impose a cash-only bond as a condition of Hamilton's pretrial release was a judicial decision subject to review by a higher court, see Mo. Sup. Ct. Rule 33.09, not a policy decision of the City.

In Monell, the Supreme Court held that a municipality may not be held liable under § 1983 for the constitutional violations of its employees on a theory of *respondeat superior*, but may be liable if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] officers." 436 U.S. at 690. Municipal liability "may be imposed for a single decision by municipal policymakers" who possess "final authority to establish municipal policy with respect to the action ordered." Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986) (plurality opinion).

Under Missouri law, municipal courts are divisions of circuit courts that are state entities. Mo. Const. Art. V, § 1; Mo. Rev. Stat. § 479.020(5). If a municipal court judge sets an "excessive" condition for release, the person accused may file an application in the circuit court, which can "make an order setting or modifying conditions for the release." Mo. Sup. Ct. Rule 37.22. Judge Ragland's judicial order

establishing a bond schedule was not a City of Hayti policy. See Woods v. City of Michigan City, Ind., 940 F.2d 275, 279 (7th Cir. 1991) (municipal judges in setting a bond schedule were "judicial officers of the State judicial system," not final municipal policymakers). And the setting of Hamilton's bond in his arrest warrant was a judicial act subject to review or reversal by higher state courts. Therefore, we agree with the district court that neither the adoption of the bond schedule nor the setting of Hamilton's bond was a final decision by a municipal policymaker establishing municipal policy with respect to the action ordered. See Granda, 472 F.3d at 569 (municipal judge detention order was not a final policy decision creating § 1983 municipal liability); accord King v. City of Crestwood, Missouri, 899 F.3d 643, 649 (8th Cir. 2018).

Hamilton argues that Judge Ragland's unconstitutional bond practice is attributable to the City because it was "adopted" by Hayti's chief of police, like the municipal judge's impoundment order that led to excessive delay in returning the § 1983 plaintiff's vehicle in Coleman, 40 F.3d at 262. But our decision in Coleman simply reversed the dismissal of a procedural due process claim and remanded for the development of "key issues," including "the role of municipal officials in adopting Judge Watt's order as official policy." Id. Here, Hamilton presented no evidence showing how the "adoption" of Judge Ragland's bond schedule by the City of Hayti police caused the deprivation of Hamilton's rights as an indigent arrestee. "A municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct parallels or appears entangled with the desires of the municipality." Eggar v. City of Livingston, 40 F.3d 312, 316 (9th Cir. 1994), cert. denied, 515 U.S. 1136 (1995).

Hamilton further argues that, even if Judge Ragland's bond practice was not an official policy, it was an unconstitutional municipal custom "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Monell, 436 U.S. at 691. To prevail on this theory, he must demonstrate (1) "[t]he existence of a

-11-

continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees"; (2) "[d]eliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct;" and (3) "proof that the custom was the moving force behind the constitutional violation." Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999) (quotation omitted). "[O]nly 'deliberate' action by a municipality can meet the 'moving force' requirement." Id., citing Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 400 (1997). Applying this standard, even if we considered Judge Ragland's judicial bond practice to be part of municipal custom or usage, given Hamilton's right to challenge his conditions of release, we would affirm the dismissal of the municipal liability claim because there is no evidence that Judge Ragland, Overbey, or any City employee set the cash-only bond condition with deliberate indifference to Hamilton's rights as an indigent arrestee.

## IV.

Finally, Hamilton argues the district court erred in granting summary judgment on his § 1983 claim that Inman conspired with the other defendants to deprive Hamilton of his federal constitutional rights. Although a § 1983 conspiracy claim requires proof of action under color of state law, "[i]t is enough that [a private party] is a willful participant in joint action with the State or its agents." Dennis v. Sparks, 449 U.S. 24, 27 (1980). To survive summary judgment, a plaintiff must point to sufficient evidence for a reasonable jury to find that "there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." Mershon v. Beasley, 994 F.2d 449, 451 (8th Cir. 1993), cert. denied, 510 U.S. 1111 (1994).

Hamilton argues that the requisite meeting of the minds can be inferred from the fact that Inman instigated his arrest, defendants share "close family, romantic, and personal relationships," and Overbey employed "extremely irregular" procedures in

opening the municipal court case, making the decision to arrest Hamilton, and setting an enhanced cash-only bond without involving the city prosecutor.

Inman's calling the police and filing a complaint do not establish a meeting of the minds. "[A] private party's mere invocation of state legal procedures does not constitute state action." Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851, 855 (8th Cir. 2001), cert. denied, 535 U.S. 1017 (2002); see Miller v. Compton, 122 F.3d 1094, 1097-98 (8th Cir. 1997). Hamilton presented no evidence that Inman played any part in issuing the arrest warrant, setting the bond, or preventing Hamilton's release from jail before his court appearance. We agree with the district court that Inman's "familial and romantic" relationships with Overbey and Officer Inman "on their own, are not sufficient to prove a 'meeting of the minds' by either direct or circumstantial evidence." As we have explained, Hamilton simply failed to prove that Overbey took "extremely irregular" actions as municipal court clerk in witnessing Inman's complaint and in issuing the arrest warrant and setting Hamilton's bond. This particular warrant may have been infirm because Judge Ragland's personal involvement was constitutionally required, but it is undisputed that Overbey believed she was exercising authority the judge had delegated.

For the foregoing reasons, the judgment of the district court is affirmed.

_____