# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-2309

———————

Fayette Granda,      *
     *
       Plaintiff - Appellant,      *
     *
       v.      *
     * Appeal from the United States
City of St. Louis; Bettye      * District Court for the
Battle-Turner, Hon., individually      * Eastern District of Missouri.
and in her official capacity with the      *
City of St. Louis,      *
     *
       Defendants - Appellees.      *

———————

Submitted: November 13, 2006
Filed: January 4, 2007

———————

Before MURPHY, ARNOLD, and BENTON, Circuit Judges.

———————

MURPHY, Circuit Judge.

Fayette Granda brought this § 1983 action against the City of St. Louis and Municipal Judge Bettye Battle-Turner for damages and injunctive relief, alleging violation of her constitutional rights by being incarcerated as a result of her daughter's truancy. The district court[1] granted summary judgment to both defendants. Granda appeals only from the judgment entered in favor of the city. We affirm.

---

[1] The Honorable Mary Ann L. Medler, United States Magistrate Judge for the Eastern District of Missouri, presiding with consent of the parties.

The St. Louis mayor appointed Judge Turner to serve as a provisional municipal court judge in 1999 and then in 2001 to a four year term as a judge of the City of St. Louis Municipal Court. Administrative Judge James Sullivan asked Judge Turner to handle the truancy docket when it was established in 2001. The St. Louis truancy ordinance, City Revised Code § 15.120.030, provides that parents are responsible for their minor children's truancy. If parents are found to have knowingly permitted their children to miss school without excuse or exemption, the ordinance permits the imposition of a fine "in an amount not less than twenty-five dollars" for each day of school missed. Granda first appeared before Judge Turner in June 2002 after her daughter failed to attend school; her case was continued for monitoring of the truancy situation.

The daughter's truancy continued, and Judge Turner issued an order on September 18, 2002 which directed her to participate in therapy, to attend school every day, and not to use any force against her parents. The order also directed that "the family is further ordered to participate with the court staff or they may be subject to charges for contempt of court." Granda appeared before Judge Turner in October after having been physically assaulted by her daughter. Judge Turner held the daughter in contempt and encouraged Granda to file criminal charges against her. Granda originally filed such charges, but she dropped them several days later.

Granda appeared before Judge Turner again on December 6, 2002, along with her husband, her daughter, and the daughter's infant son. After a conference in chambers, Judge Turner ordered that Granda be held in custody at a medium security institution until her next court appearance on or about January 21, 2003. The judge signed a form order indicating that Granda was charged with violation of a city ordinance and had previously failed to appear without just cause. In her deposition Judge Turner later stated that she incarcerated Granda for being in contempt of her orders. Although Granda was allowed to leave the institution from December 24, 2002 until January 3, 2003 to spend the holidays with her family, state social workers

took custody of her grandson while she was incarcerated and he has since been adopted by a foster family.

Granda filed this action for damages and injunctive relief under 42 U.S.C. § 1983, alleging that Judge Turner violated her due process rights by illegally incarcerating her for violating the truancy ordinance. She alleges that the ordinance did not provide for incarceration and that she lost the opportunity to care for and take custody of her grandchild as a result of Judge Turner's actions. Granda seeks to hold the city liable by alleging that it was a custom, policy, and practice of the city to incarcerate the parents of truant children illegally. Granda further maintains that the unlawful conduct of the city and Judge Turner was outrageous because it arose from evil motives or reckless indifference to her constitutionally protected rights.

The parties submitted evidence about the municipal court and the 22nd Judicial Circuit of the State of Missouri. The municipal court is a division of that circuit, and orders issued by the municipal judges are subject to review by the circuit court. The record indicates that one truant parent incarcerated by Judge Turner sought a writ of mandamus in the circuit court for her release; the petition was dismissed before a hearing after the parties reached an agreement. Municipal judges are also subject to the local rules of the 22nd circuit, which allow them to determine "matters of policy, administration, and court rules" for their court and to select an administrative judge from one of their number. The administrative judge is responsible for administering the business of the municipal court, including assigning cases, setting the agenda for meetings, and acting as a spokesperson for policy and administrative matters.

During discovery Granda sought to establish that the other municipal judges and city officials knew of or encouraged Judge Turner's practice of incarcerating the parents of truant children. The other judges stated in their depositions that they knew Judge Turner incarcerated parents and that some of them had talked with her about whether that was legal and about the procedures for finding a party in contempt. Judge Turner was elected administrative judge by the other judges while Granda was

in custody; Judge Sullivan testified that her selection had been favored by the mayor. Granda also produced evidence of a September 2002 press conference held by the mayor in Judge Turner's courtroom where he emphasized the importance of the truancy ordinance. In his 2003 state of the city address, the mayor praised Judge Turner for following his suggestion to "hold parents equally responsible" for the acts of their children. Granda introduced court records indicating that Judge Turner had incarcerated at least 31 other parents charged with violating the truancy ordinance.

Although Judge Turner's orders were not appealable to the other municipal court judges, Granda asserts that Judge Sullivan once acted to release a minor who had been ordered incarcerated by Judge Turner. Judge Sullivan explained in his deposition that he acted because only the juvenile court had jurisdiction over minors. Judge Walsh, who was elected administrative judge after Judge Turner, testified in her deposition that she reassigned the judge to a full time arraignment calendar while shifting the truancy calendar to the provisional judges because of the amount of time it consumed. Judge Walsh also told Judge Turner that the truancy ordinance did not allow the incarceration of parents of truant children.

Judge Turner and the city moved for summary judgment, arguing that Turner could not be held liable for acts taken in her judicial capacity because of judicial immunity and the Eleventh Amendment. The city asserted that it was also entitled to summary judgment because respondeat superior liability is not available under 42 U.S.C. § 1983, and Granda failed to establish a policy or practice of the city sufficient to hold it liable for Judge Turner's actions. The district court granted summary judgment in favor of the defendants. First, it concluded that Judge Turner was entitled to judicial immunity because her decision to incarcerate Granda was a judicial one not made in the absence of jurisdiction. As to the city, the court concluded that Granda failed to establish facts supporting her argument that her incarceration was the result of a municipal policy, practice, or custom. Granda does not challenge the district court's holding that her claim against Judge Turner is barred by judicial immunity and appeals only the judgment entered in favor of the city.

-4-

We review the grant of summary judgment de novo, using the same standard as the district court. Bunch v. Canton Marine Towing Co., Inc., 419 F.3d 868, 870 (8th Cir. 2005). We view the evidence in the light most favorable to the non moving party and grant summary judgment if there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Lund v. Hennepin County, 427 F.3d 1123, 1125 (8th Cir. 2005).

Granda claims on appeal that the city is liable for Judge Turner's decision to place her in custody because Judge Turner was the final municipal policymaker in regard to truancy matters. She argues in the alternative that the city is liable because the mayor and other judges, as policymaking officials with authority to stop Judge Turner's practices, permitted and tacitly authorized her to continue incarcerating parents illegally. The city responds that the judge's act of incarcerating Granda was not a policy decision, but rather a judicial one for which it cannot be held liable because it had no control over Judge Turner's judicial decisions. It also notes that Granda did not challenge the district court's conclusion that the judge's decision to incarcerate her was judicial in nature.

Granda finds significance in the fact that the city code requires that the municipal judges submit semiannual reports to the mayor containing data about their cases and about ordinance violations and that they confer with police officials and heads of other departments to recommend more effective means of enforcing ordinances. The fact that the city seeks information and input from the judges does not convert them into municipal policymakers, however. Nor does the fact that a judge is appointed to her office by a mayor convert her into an executive official.

A claim brought against a municipality under § 1983 is sustainable only if a constitutional violation has been committed pursuant to an official custom, policy, or practice of the city, see Monell v. N.Y. City Dep't of Social Servs., 436 U.S. 658, 690-92 (1978); Williams v. Butler, 863 F.2d 1398, 1400 (8th Cir. 1988), or is so pervasive among non policymaking employees of the municipality so "as to constitute a custom

or usage with the force of law." Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003). Although a single act of a city official "whose acts or edicts may fairly be said to represent official policy" may give rise to municipal liability under § 1983, Monell, 436 U.S. at 694, a municipality will only be liable under § 1983, where a city official "responsible for establishing final policy with respect to the subject matter in question" makes a deliberate choice among competing alternatives that results in the violation of constitutional rights. Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986).

Claims against a municipality based on the acts of an individual officer or entity instead of a written policy or code have succeeded in circumstances where the action was not "subject to significant review" because the officer was in a "policy making position . . . represent[ing] the official policy of the municipality." McGautha v. Jackson County Collections Dep't, 36 F.3d 53, 56 (8th Cir. 1994). A governmental subdivision can face liability under § 1983 for the final policy decisions of officials in managerial or executive offices, such as a prison director failing to discipline officers, Ware v. Jackson County, 150 F.3d 873 (8th Cir. 1998), a mayor ordering the unlawful removal of citizens, Hollins v. Powell, 773 F.2d 191 (8th Cir. 1985), or a police superintendent making final human resources decisions. Angarita v. St. Louis County, 981 F.2d 1537 (8th Cir. 1992). These actions were of a different nature than Judge Turner's, however.

Granda asserts that a city can also be held liable for the decision of a municipal judge, relying on Williams v. Butler, 863 F.2d 1398. That case involved the administrative decision of a municipal judge to terminate his law clerks, rather than a judicial decision that is subject to review or reversal by higher state courts. Id. at 1398; see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988) ("the authority to make municipal policy is necessarily the authority to make *final* policy") (emphasis in original). Granda's argument that the city is liable because the other municipal judges should have prevented her incarceration is unavailing. The municipal court is a division of the state circuit court, and review of a judge's

decisions is to be sought in that court. Judge Sullivan's decision to release the minor was a judicial act in recognition of a lack of jurisdiction, and Judge Walsh reassigned Judge Turner after she succeeded her as administrative judge pursuant to the local rules of the 22nd judicial circuit court.

Judge Turner's order was a judicial decision made in a case that came before her on a court docket, and Granda does not appeal the district court's holding that the judge was entitled to judicial immunity. Granda fails to cite a single case where a municipality has been held liable for such a decision. We conclude that the judicial order incarcerating Granda was not a final policy decision of a type creating municipal liability under § 1983.

Accordingly, we affirm the judgment of the district court.

_____