# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-2982

_____

Tamatrice Williams

*Plaintiff - Appellant*

v.

City of Sherwood

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: December 10, 2019
Filed: January 28, 2020

_____

Before ERICKSON, ARNOLD, and KOBES, Circuit Judges.

_____

ARNOLD, Circuit Judge.

More than two decades ago, Tamatrice Williams wrote four checks on insufficient funds in violation of Arkansas law. *See* Ark. Code Ann. § 5-37-302(a). She alleges that, as a result, she got "caught in a never-ending cycle of court proceedings" over the next twenty years in the Sherwood District Court, which resulted in numerous fines, arrests, and days in jail. She sued the City of Sherwood

under 42 U.S.C. § 1983, claiming that it had jailed her without inquiring into whether she had the means to pay the fines imposed and without appointing counsel for her. The district court[1] dismissed Williams's claims on the ground that a judgment in her favor "would necessarily imply the invalidity of h[er] conviction or sentence," *see Heck v. Humphrey*, 512 U.S. 477, 487 (1994), and Williams appeals. Reviewing de novo, *see Mick v. Raines*, 883 F.3d 1075, 1078 (8th Cir. 2018), we affirm, though on a different ground. *See Duffner v. City of St. Peters*, 930 F.3d 973, 976 (8th Cir. 2019).

At this stage we accept the factual allegations in the complaint as true and view them in a light most favorable to Williams. *See Barton v. Taber*, 820 F.3d 958, 963 (8th Cir. 2016). According to Williams, she and others lined up for cattle-call appearances before the judge of what was called the hot-check division of the Sherwood District Court. Some defendants faced new charges while others appeared for periodic "review hearings" to update their progress in making payments toward previously imposed fines. Proceedings were closed to the public, including family and friends. To be allowed inside the courtroom, defendants had to sign forms waiving representation by counsel.

Williams asserts in her complaint that the city "treated each review hearing based on [a] prior conviction as an opportunity to open a new, separate, stand-alone criminal case, thereby purportedly authorizing the court to impose new and duplicative court costs, fines, and fees on the same hot check defendant." So when someone failed to appear for a review hearing or failed to make payments toward a fine, the city would issue an arrest warrant and open a new criminal case, which allowed the city to impose fines above and beyond the statutory limit for a hot-check conviction. The city's police department, according to Williams, carried out the arrest

---

[1]The Honorable James M. Moody Jr., United States District Judge for the Eastern District of Arkansas.

warrants by tracking down defendants and ordering them to make payments on the spot or be taken to jail.

Williams alleges that there was no inquiry into whether defendants had the ability to pay the fines imposed. Instead, when defendants fell behind on payments, the judge would order them jailed for up to 120 days or until outstanding debts were paid. Williams maintains that fines and fees made up a significant portion of the city's revenue.

Williams also maintains that she and her family paid several thousand dollars in fines and that she has been taken to jail in front of her young children on several occasions: She estimates she has been arrested eight different times and spent 160 days in jail. Williams escaped the debt cycle when the judge released her from her outstanding obligations to the city a mere two days after a putative class action was filed against the city and the judge involving the same practices that Williams challenges here. *See Dade v. City of Sherwood*, 4:16-CV-602-JM-JJV. The judge and the city eventually settled the *Dade* lawsuit, agreeing, among other things, to inquire into a person's ability to pay fines, to provide clearer advice on the right to counsel, and to maintain publicly accessible video recordings of the proceedings in the hot-check court. In the settlement agreement the city agreed to be bound only to the extent it employs someone, or there is a city official, who has any involvement or control over the complained-of practices.

In *Granda v. City of St. Louis*, the plaintiff sued the City of St. Louis and a municipal judge after the judge jailed her for her daughter's truancy. 472 F.3d 565, 566 (8th Cir. 2007). After the case was dismissed, the plaintiff argued on appeal that the city was liable for the judge's decision because the judge was the final municipal policymaker regarding truancy matters. We explained, however, that even though the mayor appointed the judge, who was required by ordinance to report data to the mayor about ordinance violations and confer with city officials about ordinance

enforcement, the judge was not a final municipal policymaker, if he was a municipal policymaker at all. *Id.* at 568–69. We explained that the municipal court was a division of the state circuit court, where decisions of the municipal court could be reviewed. We also emphasized that the judge's jailing of the plaintiff "was a judicial decision made in a case that came before [the judge] on a court docket," and the plaintiff failed to cite a single case where a municipality had been held liable for such a decision. *Id.* at 569.

Williams's claims are somewhat different though not meaningfully so. Her counsel explained two important features of Williams's case at oral argument. First, despite occasionally broader language in her complaint, Williams's counsel said she was asserting that her constitutional rights were violated on account of an unconstitutional municipal policy, not a custom or practice. A claim against a municipality under § 1983 is sustainable only if there is alleged a constitutional violation "committed pursuant to an official custom, policy, or practice of the city." *See id.* at 568. Second, Williams's counsel was careful to emphasize that Williams was not alleging that the judge was the final policymaker here; instead, Williams alleges that the city council and mayor were the final policymakers and that the judge was merely an agent carrying out the city's unconstitutional policies.

We fail to see how this can be, at least in regard to judicial actions taken by a judge like the one in this case. We recognize that the city paid the judge's salary and funded the Sherwood District Court. But the judicial decisions of a duly elected judge are not the kind of decisions that expose municipalities to § 1983 liability. Neither the city council nor the mayor has the power to set judicial policy for Arkansas district court judges or the power to ratify their judicial decisions, even if the city's "policymakers knew of the judge's conduct and approved of it." *See DeLeon v. City of Haltom City*, 106 F. App'x 909, 911 (5th Cir. 2004). Or as another circuit court has held, "[a] municipality cannot be liable for judicial conduct it lacks the power to require, control, or remedy, even if that conduct parallels or appears entangled with

-4-

the desires of the municipality." *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir. 1994).

Another difficulty with Williams's claims is that she merely speculates vaguely and conclusorily that the city council and mayor had developed unconstitutional policies. The only possible marker of a municipal policy that Williams identifies in her complaint is a city ordinance that created a position at the judge's request to help with serving the warrants associated with the hot-check court and thereby help bring in revenue. But such an ordinance demonstrates merely that events occurring in the court "parallel[ed] or appears entangled with the desires of the municipality," *see id.*, or that the city knew of and approved of the judge's conduct. *See DeLeon*, 106 F. App'x at 911. Critically, at no point does Williams identify an ordinance or other municipal action whereby the city directs someone to commit an act that is a constitutional violation or, with deliberate indifference to known or obvious consequences, directs someone to take an action that leads to a violation of constitutional rights. *See Hollingsworth v. City of St. Ann*, 800 F.3d 985, 992 (8th Cir. 2015). Williams has not alleged that city policymakers deliberately set itself on a course that would lead to her constitutional rights being violated. *See Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007) (en banc).

Instead, Williams relies on conclusory assertions that the city council and mayor somehow created some unspoken policy and tasked the judge with carrying it out. But as another circuit recently explained in a case containing similar conclusory allegations, "any connection between the judicial acts and the [city officials] is too chimerical to be maintained." *McCullough v. Finley*, 907 F.3d 1324, 1335 (11th Cir. 2018). To the extent Williams argues that, by agreeing to act as an agent for the city, the judge and city necessarily conspired to violate constitutional rights, we do not think the allegations of any such conspiracy are specific enough to survive a motion to dismiss. *See Johnson v. Perdue*, 862 F.3d 712, 718 (8th Cir. 2017); *Marti v. City of Maplewood*, 57 F.3d 680, 685 (8th Cir. 1995). Vague allegations of a conspiracy

to violate constitutional rights do not plausibly support a claim. *See McCullough*, 907 F.3d at 1334–35.

We find it insignificant that the city had previously settled the *Dade* lawsuit, a fact that at first glance seems to implicate the city in the goings-on in the hot-check court. But litigants settle lawsuits for a variety of reasons, especially when they are political actors sometimes subject to public pressure to act in a certain way. At no point did the city admit that it had devised, or was responsible for, an unconstitutional policy; in fact, the settlement agreement indicates to the contrary.

We therefore uphold the district court's dismissal of Williams's claims about the court's failure to inquire into her indigency and failure to appoint counsel, along with her related, derivative claims about the practices in the Sherwood District Court.

Affirmed.

_____