# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 23-1042

———————————————

Sarah Felts

*Plaintiff - Appellee*

v.

Megan Ellyia Green, St. Louis Board of Aldermen, President

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

——————————

Submitted: September 20, 2023
Filed: January 29, 2024

——————————

Before LOKEN, WOLLMAN, and BENTON, Circuit Judges.

——————————

BENTON, Circuit Judge.

Lewis E. Reed, the President of the St. Louis Board of Aldermen, blocked Sarah Felts on Twitter. She sued Reed, in his official capacity, under 42 U.S.C. § 1983 for violating her First and Fourteenth Amendment rights. After a bench trial,

the district court[1] awarded Felts declaratory relief, nominal damages, costs, and attorney's fees. The Board's new President, Megan E. Green, appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Reed was the Board's President from 2007 until 2022. On January 26, 2019, Felts tweeted criticizing Reed's support for closing the St. Louis Workhouse, a medium security jail. Her tweet read: "What do you mean by 'change the messaging around #CloseTheWorkhouse,' @PresReed? #STLBOA #aldergeddon2019 #WokeVoterSTL." Later that day, Reed blocked her Twitter account.

The district court found that closing the Workhouse was a subject of political debate, that Reed used the account primarily for official government business and to interact with other Twitter users about it, and that he did not use the account for campaign activities. He testified he had blocked other individuals from his account who were "talking bad about [him] as part of being . . . an elected official."

Felts sued Reed, in his official capacity under 42 U.S.C. § 1983, for violating her First and Fourteenth Amendment rights by blocking her from the account—which the district court held to be act of viewpoint discrimination in a designated public forum.[2] "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." ***Monell v. Dep't of Soc. Servs.***, 436 U.S. 658, 690 n.55 (1978). After Reed resigned, the district court substituted Green, the Board's new President. The district court awarded declaratory relief, nominal damages, attorney's fees, and costs, while denying injunctive relief as moot. The City appeals the grant of declaratory relief and nominal damages.

---

[1]The Honorable John A. Ross, United States District Court Judge for the Eastern District of Missouri.

[2]The City does not appeal the district court's public forum ruling.

"After a bench trial, this court reviews legal conclusions de novo and factual findings for clear error." ***Urban Hotel Dev. Co. v. President Dev. Grp., L.C.***, 535 F.3d 874, 879 (8th Cir. 2008), *citing* ***Roemmich v. Eagle Eye Dev., LLC***, 526 F.3d 343, 353 (8th Cir. 2008). "The burden is on the objecting party to demonstrate clear error in factual findings, and the evidence must be construed in the light most favorable to the party who prevailed at trial." ***Griffin v. City of Omaha***, 785 F.2d 620, 626 (8th Cir. 1986), *citing* ***Craft v. Metromedia, Inc.***, 766 F.2d 1205, 1212 (8th Cir. 1985). "[T]he identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question . . . ." ***Jett v. Dallas Indep. Sch. Dist.***, 491 U.S. 701, 737 (1989).

II.

This court "must consider the jurisdictional issue of mootness *sua sponte*." ***Perficient, Inc. v. Munley***, 973 F.3d 914, 916 (8th Cir. 2020). The court's "normal practice when a civil case becomes moot pending appellate adjudication" is to "vacate the district court's judgment." ***Moore v. Thurston***, 928 F.3d 753, 758 (8th Cir. 2019), *citing* ***Arizonans for Official English v. Ariz.***, 520 U.S. 43, 71 (1997), *quoting* ***United States v. Munsingwear, Inc.***, 340 U.S. 36, 40 (1950); *see* ***Already, LLC v. Nike, Inc.***, 568 U.S. 85, 91 (2013), *quoting* ***Murphy v. Hunt***, 455 U.S. 478, 481 (1982) (per curiam) ("A case becomes moot . . . 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'").

Reed unblocked Felts after she filed the complaint. This voluntary cessation does not moot declaratory relief. "'[A] defendant's voluntary cessation of a challenged practice ordinarily does not deprive a federal court of its power to determine the legality of the practice.'" ***Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.***, 528 U.S. 167, 189 (2000), *quoting* ***City of Mesquite v. Aladdin's Castle, Inc.***, 455 U.S. 283, 289 (1982). True, declaratory relief "'might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" ***Id.***, *quoting* ***United States v. Concentrated Phosphate Export Ass'n***, 393 U.S. 199, 203 (1968). "The heavy

-3-

burden of persuading the court that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness." *Id.* The City does not identify subsequent events that make it absolutely clear that Felts could not reasonably be blocked again for tweets critical of the President of the Board of Aldermen.

Most importantly, Reed's resignation does not moot the City's liability because, under § 1983, nominal damages are at stake. "[T]he availability of nominal damages is enough to stave off mootness." *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 37 F.4th 1357, 1362 (8th Cir. 2022), *citing Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). *See generally Friends of the Earth*, 528 U.S. at 192 ("there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness.").

## III.

Felts sued under 42 U.S.C. § 1983, which "imposes liability for certain actions taken 'under color of' law that deprive a person 'of a right secured by the Constitution and laws of the United States.'" *Dossett v. First State Bank*, 399 F.3d 940, 947 (8th Cir. 2005), *quoting Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931 (1982). "[A] local government is liable under § 1983 for its policies that cause constitutional torts. These policies may be set by the government's lawmakers, 'or by those whose edicts or acts may fairly be said to represent official policy.'" *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784 (1997), *quoting Monell*, 436 U.S. at 694. "Municipal liability 'may be imposed for a single decision by municipal policymakers' who possess 'final authority to establish municipal policy with respect to the action ordered.'" *Hamilton v. City of Hayti*, 948 F.3d 921, 929 (8th Cir. 2020), *quoting Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986) (majority opinion). "[T]he challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business." *City of St. Louis v. Praprotnik*, 485 U.S.

112, 123 (1988) (plurality opinion), *citing* **Pembaur**, 475 U.S. at 482-83, and n.12 (plurality opinion).

The district court ruled: (1) Reed's decision to block Felts's Twitter account was a final municipal policy decision in his area of the City's business, the office of the President of the Board of Alderman, (2) he administered the account under color of law as an official governmental account, (3) which violated Felts's First and Fourteenth Amendment rights. The City appeals only the first ruling.

IV.

The City argues that Reed did not have final policymaking authority for the social media policy of the President of the Board of Aldermen. To determine whether an official has final policymaking authority, this court "[r]eview[s] the relevant legal materials, including state and local positive law, as well as "'custom or usage" having the force of law.'" **Jett**, 491 U.S. at 737, *quoting* **Praprotnik**, 485 U.S. at 124, n.1. (plurality opinion).

Reed, as President of the Board of Aldermen, was not just another alderman, but held a distinct office with unique powers. The President of the St. Louis Board of Aldermen is "elected . . . by general ticket from the city at large." **St. Louis, Mo., City Charter art. IV, § 1**. *See* **Coop. Home Care, Inc. v. City of St. Louis**, 514 S.W.3d 571, 578 (Mo. banc 2017) ("A constitutional charter city, such as St. Louis City, derives its charter powers from article VI, section 19(a) of the Missouri Constitution . . . ."). The President's authority is beyond "'discretion in the exercise of particular functions.'" *See* **Bernini v. City of St. Paul**, 665 F.3d 997, 1008 (8th Cir. 2012), *quoting* **Pembaur**, 475 U.S. at 482 (plurality opinion). The parties stipulated that Reed:

- "had the final authority regarding communication on behalf of the Office of President of the Board of Aldermen for the City of St. Louis;"

- "did not answer to anyone 'within the structure of the City of St. Louis government;'"
- had exclusive authority to hire and fire employees within the Office and directed the duties of the Office's secretary;
- was the Office's "ultimate authority;"
- the staff within the Office of the President "ultimately reported to him;"
- "was free to ignore the [c]ity of St. Louis' social media policies issued by the director of personnel;"
- the "Office of the President of the Board of Alderman" was never subject to outside "policies, practices, rules, regulations, recommendations, or customs" concerning social media activity.

The City repeatedly emphasizes the Board's President's vast legislative authority but ignores the City's triune executive. *See* **St. Louis, Mo., City Charter art. XVI, § 1** (the Board of Estimate—Mayor, Comptroller and President of the Board of Alderman—approves all municipal appropriations, the municipal budget, and all real estate purchases); ***Board of Estimate and Apportionment*, City of St. Louis** https://www.stlouis-mo.gov/government/departments/comptroller/services/board-of-estimate-and-apportionment/index.cfm (last visited Jan. 23, 2024) ("The Board of [Estimate] is the city's executive branch of government"); *see also **State ex rel. Mulvoy v. Miller***, 285 S.W. 504, 505-06 (Mo. banc 1926) (outlining the broad powers of the City's Board of Estimate). Among other distinct duties, the Board's President succeeds the mayor upon a vacancy, and he sits on the City's Airport commission. **St. Louis, Mo., City Charter art. VII, § 3; St. Louis, Mo., Code § 18.08.030**.

The Board's President has far more policymaking authority than the St. Louis County police superintendent—held to have final policymaking authority because he "was the highest ranking police official in St. Louis County; was responsible for the entire department; and was responsible for drafting and approving many of the department's general orders." ***Angarita v. St. Louis Cnty.***, 981 F.2d 1537, 1547 (8th

Cir. 1992).  Reed not only possessed greater authority but also faced less oversight. The voters elected Reed, while an administrative board appointed the police superintendent.  *See* **St. Louis, Mo., County Charter art. IV, § 4.270**.  The superintendent was removable by a majority vote of that board. *Id.*  Reed completely controlled the office of the President of the Board of Aldermen—removable only by a recall vote, the same procedure as for the mayor (the "chief executive officer of the city").  **St. Louis, Mo., City Charter art. III**; **art. VII, § 1**.

When Reed blocked Felts on Twitter, he executed a final municipal policy in his area of the City's business, the office of the President of the Board of Aldermen. Generally, the making of "'[a]n unconstitutional governmental policy can be inferred from a single decision taken by the highest official responsible for setting policy in that area of the government's business.'" *Dean v. Cnty. of Gage*, 807 F.3d 931, 940-41 (8th Cir. 2015), *quoting* *Angarita*, 981 F.2d at 1546.  *Cf.* *Stockley v. Joyce*, 963 F.3d 809, 823-24 (8th Cir. 2020) (holding that an individual charging decision by a prosecutor was not based on a guiding principle or procedure because it was "an individual charging decision based upon a particular set of facts supported by arguable probable cause.").  Regardless, while in office, Reed blocked at least five other specific individuals from his account who criticized him as an elected official.

Reed's decision to block Felts was a deliberate choice of a guiding principle and procedure to silence online critics.  *See* **Mettler v. Whitledge**, 165 F.3d 1197, 1204 (8th Cir. 1999), *citing* **Ware v. Jackson Cnty.**, 150 F.3d 873, 880 (8th Cir. 1998) (policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters.").  "Municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S at 483 (plurality opinion).  Reed made a deliberate choice to block Felts among various alternatives—ignoring the tweet, muting her account, replying from the account, replying from a pseudonymous 'burner'

-7-

account, or replying from a personal account not administered under color of law as an official governmental account.

The City contends that though Reed had *discretion* to block Felts on Twitter, he did not have *authority* to make final policy about who the city of St. Louis blocks on Twitter. By the unique powers that the City charter grants the Board's President, he has authority to establish the final social media policy for the office of the President of the Board of Aldermen. The City's Department of Personnel's Social Media Policy did not apply to Reed or to his staff. No other City social media policy applied to him. Reed was free to make final policy in his area of the City's business, which he did by blocking critics, including Felts. *See **Praprotnik***, 485 U.S. at 127 (plurality opinion) (explaining that the two features of the authority to make final policy are whether the official's decisions are subject to significant review and whether the official is bound by policies not of their own making); ***Bolderson v. City of Wentzville***, 840 F.3d 982, 985-86 (8th Cir. 2016) (highlighting the difference between final policymakers and final decisionmakers in holding that a City Administrator who, under Missouri Law, was the administrative assistant to the mayor and under the direct supervision of the mayor was not a final policymaker because she lacked the authority to establish policy); ***Copeland v. Locke***, 613 F.3d 875, 882 (8th Cir. 2010) (holding that under Missouri state law, "the mayor and the board of aldermen" of a fourth-class city in Missouri "are the final policy makers" for their state law assigned duties).

Reed's choice to block Felts on a government account was unilateral, unreviewable, and not subject to other policies. He created municipal policy in his area of the City's business. Because of the unique power of the President of the Board of Aldermen, Reed exercised final policymaking authority when he blocked Felts. The City of St. Louis is liable under 42 U.S.C. § 1983.

\* \* \* \* \* \* \*

The judgment is affirmed.

                        _____