# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3846

_____

Diane Bolderson

*Plaintiff - Appellant*

v.

City of Wentzville, Missouri

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 20, 2016
Filed: November 1, 2016

_____

Before WOLLMAN, ARNOLD, and KELLY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

This case involves an employment dispute between the City of Wentzville, Missouri, and its former building commissioner, Diane Bolderson. Bolderson's employment proceeded without incident for about twelve years, but significant difficulties arose when she criticized changes to the city's building code, requested an advisory opinion on the bidding process for purchasing computer equipment, and

asked for an audit of the city's procurement department. Difficulties came to a boil when Bolderson criticized the city's handling of an aquatic-center project. She sent a memo voicing her concerns to the city administrator, the mayor, her immediate supervisor, and others. About two weeks later, Bolderson forwarded a formal report to the mayor, city attorney, and others, accusing the city's board of aldermen, the city administrator, and the city's procurement director of fraud and acting with conflicts of interest. The city administrator fired her four days after she submitted the report. He gave Bolderson a list of reasons for her termination, which included her disparagement of city officials, criticism of the board's decisions, insubordination by communicating directly with the mayor, baseless accusations of fraud, misuse of work time, and disruption of city operations.

Bolderson sued the city under 42 U.S.C. § 1983, alleging, as relevant here, that it fired her in retaliation for engaging in protected speech. The district court[1] granted summary judgment to the city, holding that, though Bolderson spoke on a matter of public concern, she did so in her official capacity as building commissioner and not as a private citizen. *See Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). The district court also concluded that, even if Bolderson had spoken as a private citizen, her claims would have failed the *Pickering* balancing test. *See Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563 (1968). The district court noted alternatively that the city would be able to demonstrate that it would have terminated Bolderson anyway, even if she had not engaged in the allegedly protected speech. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Bolderson appeals the district court's decision to grant summary judgment to the city.

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

We can affirm the grant of summary judgment for any reason supported by the record, including a reason different from the one that the district court gave, *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013), and we conclude that the present record simply cannot support a conclusion that the city is liable. A municipality cannot be held liable under § 1983 solely because it employs a tortfeasor, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978): Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). Bolderson maintains that the city is liable because her harm stemmed from an official municipal policy or an unofficial municipal custom.

An action can constitute official municipal policy only if the decisionmaker in question possesses final authority to establish municipal policy with respect to the action ordered. *Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013). We look to applicable state and local law to determine where final policymaking authority rests. *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 662 n.9 (8th Cir. 2007). A single decision by a municipal authority can in some circumstances constitute official policy, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986), and Bolderson argues that the city administrator's decision to fire her necessarily constituted official city policy because the city administrator is the highest-ranking official over employment matters under applicable state and local law.

We disagree. The applicable Wentzville ordinance shows unquestionably that the city administrator is not the final municipal authority for present purposes: The ordinance provides that "[t]he City Administrator shall be the chief administrative assistant to the Mayor, and shall have general superintending control of the administration and management of the government business, officers and employees of the City, subject to the direction and supervision of the Mayor." Wentzville, Mo., Code § 120.180. That the city administrator is deemed an "administrative assistant to

-3-

the Mayor" who acts "subject to the direction and supervision of the Mayor" shows that it is the mayor—not the city administrator—who has ultimate authority to hire and fire employees.

We note further that we have adopted the distinction between final policymakers and final decisionmakers that a Supreme Court plurality drew in *Pembaur*: The fact that "a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Davison*, 490 F.3d at 660. So possessing "discretion to hire and fire does not necessarily include responsibility for establishing related policy." *Id.* Therefore, the city administrator's power to hire and fire employees, assuming that power existed here, could not transform him into a policymaker.

Bolderson also contends that the mayor's delegation of authority to the city administrator to address Bolderson's criticisms and the mayor's alleged tacit approval of the city administrator's decision to terminate her establishes municipal liability. We disagree again, because, as a plurality of the Supreme Court stated in *City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988), "Simply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." *See also Williams v. Butler*, 863 F.2d 1398, 1402 (8th Cir. 1988) (en banc). Bolderson therefore has not shown that the mayor's delegation of authority or tacit approval of the city administrator's decision was the moving force behind her termination. *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). In fact, Bolderson says that the city administrator was the sole decisionmaker with regard to her termination. Without a showing that the mayor played a more active role in Bolderson's termination, she cannot demonstrate that the city is liable; otherwise the city could be liable solely as an employer of an alleged tortfeasor.

-4-

Bolderson further maintains that the mayor and city administrator each violated the city's anti-fraud policy in the way that they handled her report. We cannot see how officials' deviation from established policy itself constitutes official municipal policy. If it did, the concept of official municipal policy would be turned on its head.

We also reject Bolderson's contention that an unofficial municipal custom led to a violation of her constitutional rights. To trigger municipal liability based on unofficial municipal custom, the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law. *Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998). The custom must be demonstrated by a continuing, widespread, and persistent pattern of unconstitutional misconduct. *Id.* An unconstitutional custom or usage cannot arise from a single act. *McGautha v. Jackson Cnty., Mo., Collections Dep't*, 36 F.3d 53, 57 (8th Cir. 1994).

Bolderson maintains, finally, that her harm stemmed from an unofficial municipal "custom of discouraging reports of misconduct or corruption by city officials." It is difficult to see exactly how Bolderson can rely on such a custom to support her claim, unless she is insinuating that the custom is proof that she was retaliated against for exercising her First Amendment rights. The inference she asks us to draw is weak at best. The fact that an employer does not like complaints is not much evidence that it fires people for making them. Bolderson's evidence that there was such a policy, moreover, is similarly weak. She says that the city did not intend to investigate her complaint, but this single act could not show a continuing, widespread, and persistent pattern of unconstitutional misconduct. Bolderson tangentially refers to other evidence of the custom that she claims victimized her, but the materials cited reveal only unsubstantiated suspicions. Bolderson is obligated to meet proof with proof at the summary-judgment stage, *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010), and the material offered falls short of demonstrating a reasonable dispute about the presence of a continuing, widespread,

and persistent pattern of unconstitutional misconduct that led to her termination. No reasonable jury could conclude otherwise. *See Rohr v. Reliance Bank*, 826 F.3d 1046, 1052 (8th Cir. 2016).

Affirmed.

_____