# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1066

_____

Dewey Austin Barnett, II

*Plaintiff - Appellant*

v.

Brenda Short; Christopher Rulo; Jefferson County Jail

*Defendants - Appellees*

------------------------------

Council on American-Islamic Relations; Professor Byron Johnson; 26 Religious
Organizations; Professor Douglas Laycock

*Amici on Behalf of Appellant(s)*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 14, 2025
Filed: February 26, 2025

_____

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Dewey Austin Barnett, II, acting pro se, sued a Missouri county and a jail administrator named Brenda Short, complaining that they had refused to allow him to have a Bible while he was in administrative segregation in the county jail. The district court construed the complaint as raising claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and 42 U.S.C. § 1983 and dismissed the case. Barnett appeals, and we affirm in part and reverse in part.

Barnett filed his complaint on a form that the district court supplied and directed him to use. He alleged that while he was in administrative segregation at the Jefferson County jail he "was denied religion (Holy Bible)." His lack of a Bible, he further alleged, caused him anxiety, stress, and depression, and he said that he felt guilt and shame because the deprivation led him "to sin and be a sinner." He sought damages and injunctive relief.

Barnett attached two exhibits to his complaint. *See* Fed. R. Civ. P. 10(c). One was a grievance he submitted to the jail asserting that he had been placed in administrative segregation three days earlier and was told he could have a mattress and blanket but "no property no hygiene and no Bible." He wrote, "It is in the Constitution of the United States." Someone from the jail responded by writing that Barnett could have nothing more and that his "behavior has taken away all privileges." The response continued: "[F]eel free to quote the constitution all you want to—I don't mind at all. You will not recieve [sic] anything more." The second exhibit was a handwritten letter that Barnett wrote to a lieutenant in the Sheriff Department's Internal Affairs Division regarding grievances he had with the jail, and he expressed fear that he would not be released from administrative segregation as scheduled about a week later.

The district court reviewed the complaint before service and dismissed the action. *See* 28 U.S.C. § 1915A. It first held that Barnett's RLUIPA claim could not succeed because RLUIPA does not permit plaintiffs to recover money damages, and his request for injunctive relief was moot since Barnett had been transferred to another facility. As for the claim under 42 U.S.C. § 1983 that Short had violated Barnett's constitutional right to the free exercise of religion, the court held that Barnett didn't adequately plead Short's personal involvement in the decision to deprive him of his Bible and besides the decision didn't substantially burden his free exercise. The court also dismissed Barnett's § 1983 claim against the county, explaining that he had failed to allege that it had a policy of denying Bibles to inmates in administrative segregation. Barnett appeals from the dismissal of both his RLUIPA and § 1983 claims.

We begin with the court's dismissal of Barnett's RLUIPA claim. Barnett doesn't challenge the court's determination that his transfer mooted his request for injunctive relief; rather, he maintains that the district court erred in determining that RLUIPA does not permit him to recover damages. Before we turn to that contention, though, the defendants erect a preliminary hurdle. They say that Barnett didn't "invoke" RLUIPA in the first place because he never explicitly identified the Act in his complaint or alleged that a substantial burden was "imposed in a program or activity that receives Federal financial assistance." *See* 42 U.S.C. § 2000cc–1(b)(1).

We are not swayed. Courts must liberally construe pro se complaints. *See Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). If the essence of a claim is discernible, "the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *See id.* That's exactly what the district court did here, and for good reason: The essence of Barnett's claim was that the defendants infringed his religious liberty, and RLUIPA and the Constitution provide the proper legal frameworks for considering that alleged infringement. So, as other courts have done in similar circumstances, we think it was

proper for the district court to construe Barnett's complaint as raising a RLUIPA claim. *See, e.g.*, *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012); *Alvarez v. Hill*, 518 F.3d 1152, 1159 (9th Cir. 2008). We note as well that the complaint form the district court gave Barnett warned him not to cite statutes, so it would be hard law to fault him for not mentioning RLUIPA. And the form posed questions apparently designed to narrow the focus to the harm that he personally suffered. We suspect that few if any pro se inmates would think it appropriate or relevant to discuss federal funding on this form. A decision to the contrary would effectively cut off many potentially meritorious RLUIPA claims despite the liberal construction owed to pro se complaints and Congress's instruction that RLUIPA "shall be construed in favor of a broad protection of religious exercise." *See* 42 U.S.C. § 2000cc–3(g).

Now we turn to whether RLUIPA permits claims for damages. As relevant here, RLUIPA prohibits the government (including a county, *see id.* § 2000cc–5(4)(A)(i)) from imposing a substantial burden on a jail inmate's religious exercise, even if the burden results from a rule of general applicability, unless the government shows that the burden is the least restrictive means of furthering a compelling government interest. *See Holt v. Hobbs*, 574 U.S. 352, 357–58 (2015); *see also* 42 U.S.C. § 2000cc–1(a). RLUIPA expressly gives inmates a cause of action to vindicate their rights in court. According to 42 U.S.C. § 2000cc–2(a), "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." So the question becomes whether "appropriate relief" includes damages.

Though our court has said without explanation in two nonbinding opinions that RLUIPA doesn't permit the recovery of damages, *see Scott v. Lewis*, 827 F. App'x 613, 613 (8th Cir. 2020) (per curiam); *Heikkila v. Kelley*, 776 F. App'x 927, 928 (8th Cir. 2019) (per curiam), we conclude that RLUIPA's reference to "appropriate relief" encompasses damages. Damages are "the traditional form of relief offered in the courts of law." *See Curtis v. Loether*, 415 U.S. 189, 196 (1974). Far from being

-4-

unusual, damages are more nearly the default remedy in American courts in most circumstances, and nowhere in RLUIPA has Congress affirmatively excluded this commonplace recovery. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 66, 75–76 (1992). As Barnett and several amici point out, moreover, damages are many times the only relief that a jail inmate can obtain. That's because jail inmates are often housed in particular jails for less time than it takes to litigate a case to completion, and their transfer or release from those facilities will typically moot their requests for injunctive relief, as here. RLUIPA specifically extends its protection to jail inmates, *see* 42 U.S.C. §§ 2000cc–1(a), 1997(1)(B)(ii), and so, since opportunities for injunctive relief will frequently be fleeting, damages are even more "appropriate" than they otherwise would be. Furthermore, the congressional admonition that RLUIPA "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution," *see* 42 U.S.C. § 2000cc–3(g), would be hard to square with a congressional intent to place the most common form of relief outside the bounds of what is appropriate.

The Supreme Court's decision in *Tanzin v. Tanvir*, 592 U.S. 43 (2020) furnishes instructive guidance. In that case, the Court considered a question under the Religious Freedom Restoration Act (RFRA) similar to the one we now confront. The Supreme Court has described RFRA as RLUIPA's "sister statute," and indeed Congress enacted RLUIPA to fill part of the void created when the Court held that RFRA did not apply to states and their subdivisions. *See Holt*, 574 U.S. at 356–57 (citing *City of Boerne v. Flores*, 521 U.S. 507 (1997)). Like RLUIPA, RFRA permits a plaintiff to sue to recover "appropriate relief against a government" when it substantially burdens a person's exercise of religion without furthering a compelling governmental interest. *See* 42 U.S.C. § 2000bb–1. The Court in *Tanzin* unanimously held that a damage remedy fits the bill. *See Tanzin*, 592 U.S. at 45. It explained that "damages have long been awarded as appropriate relief" in suits against government officials and are still "commonly available" against them, such as in § 1983 suits for clearly established violations of the First Amendment. *See id.* at 49–50. The Court

also observed that Congress knew how to limit RFRA plaintiffs to injunctive relief but did not do so. *See id.* at 51. The same could be said for the availability of damages in a RLUIPA action given the similar contexts in which RFRA and RLUIPA operate and the fact that Congress knows how to limit the types of relief available no less with RLUIPA than with RFRA.

The district court relied on *Van Wyhe v. Reisch*, 581 F.3d 639, 655 (8th Cir. 2009) in holding that RLUIPA doesn't permit the recovery of damages. But a damages remedy was denied in *Van Wyhe* because the defendants there were state officials sued in their official capacities, *see id.*, which is "the functional equivalent of a suit against the State." *See Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2012) (per curiam). The case is simply an application of the commonplace principle that a state enjoys sovereign immunity and cannot be made to pay damages. *See Van Wyhe*, 581 F.3d at 652–55. But Barnett's suit is against a county and a county official, and they do not enjoy sovereign immunity. *See Jinks v. Richland Cnty.*, 538 U.S. 456, 466 (2003). So *Van Wyhe* casts no doubt on the availability of damages here. Other circuits are in accord. *See, e.g.*, *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 289–90 (5th Cir. 2012).

But what appears clear so far becomes less so since, unlike what it did in enacting RFRA, Congress enacted RLUIPA relying on its power under the Spending Clause. (It invoked the Commerce Clause too, but since the parties don't suggest that is relevant on the facts of this case, we will not discuss the matter. *See Van Wyhe*, 581 F.3d at 652.) Under the Spending Clause, Congress can "lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. art. I, § 8, cl. 1. The spending power allows Congress to condition the receipt of federal funds in a way that furthers congressional preferences, even if promoting those preferences isn't within Congress's enumerated powers. *See South Dakota v. Dole*, 483 U.S. 203, 206–07 (1987). Here, for example, though Congress might lack the power to require counties to respect

their inmates' religious freedoms more than the Constitution requires, it can, within limits irrelevant here, condition the county's receipt of federal money on it giving religious freedom the respect Congress desires.

The Supreme Court has characterized legislation enacted under the Spending Clause as "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *See Pennhurst St. Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). But, the Court has said, Congress must express these conditions unambiguously. The idea is that a funding recipient cannot knowingly and voluntarily accept the terms of this "contract" if it cannot discern what is expected of it. Clarity, in other words, enables funding recipients "to exercise their choice knowingly, cognizant of the consequences of their participation" in the federal funding program. *See id.* So we consider whether a prospective funding recipient, at the time it decided whether to accept federal dollars, would have been aware that it could face liability for damages. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 220 (2022). We think the answer is yes in this case for the reasons we think "appropriate relief" includes damages and because damages are traditionally available against a county when it fails to live up to a bargain. *See id.* at 220–21. In short, "[n]o dive through the treatises, 50-state survey, or speculative drawing of analogies is required to anticipate" the availability of damages here. *See id.* at 225.

The district court also cited a case from the Sixth Circuit, *Haight v. Thompson*, 763 F.3d 554, 568–70 (6th Cir. 2014), which held that the phrase "appropriate relief" does not signal clearly enough for purposes of the Spending Clause that damages are available. *Haight*, in turn, rested its decision on *Sossamon v. Texas*, 563 U.S. 277 (2011), a case that involved a plaintiff who asserted a RLUIPA damages claim against the State of Texas despite its typical sovereign immunity from damages suits. *See id.* at 282. The plaintiff contended that the State had waived its sovereign immunity by accepting funds on the understanding that it would have to pay "appropriate relief" to inmates whose religious freedom the State violated. The Court disagreed, though,

that the phrase "appropriate relief" unequivocally expressed the availability of damages against a state, and so it held the State hadn't waived its sovereign immunity. *See id.* at 285–86. It explained that "the word 'appropriate' is inherently context dependent" and that in the context of suits against a sovereign monetary damages are not appropriate. *See id.* at 286. From this, the *Haight* court reasoned that if "appropriate relief" doesn't refer to damages clearly enough to waive sovereign immunity, it doesn't apprise funding recipients clearly enough that they might face damages liability under the Spending Clause. *See Haight*, 763 F.3d at 568–70.

We respectfully disagree. Since Barnett's claim against the county doesn't implicate sovereign immunity, the situation here differs materially from the one in *Sossamon*. Though damages against a defendant that enjoys sovereign immunity may not be "suitable" or "proper," damages against those that don't are the norm. *See Cummings*, 596 U.S. at 225; *Tanzin*, 592 U.S. at 49–50. So "congressional silence ha[s] an entirely different implication" in that context from the one it has here. *See Sossamon*, 563 U.S. at 289; *see also Landor v. La. Dep't of Corr. & Pub. Safety*, 93 F.4th 259, 261–62 (5th Cir. 2024) (Ho, J., dissenting from denial of rehearing en banc). We have previously held, moreover, that the demand for clarity in these contexts are not identical, as we've said in upholding RLUIPA's constitutionality that "[o]ur conclusion . . . that RLUIPA is sufficiently clear to be a valid exercise of Spending Clause power does not foreclose our consideration of whether RLUIPA is sufficiently clear to effectuate a knowing waiver of the state's Eleventh Amendment sovereign immunity from a suit for monetary damages." *See Van Wyhe*, 581 F.3d at 652. The *Tanzin* Court also distinguished *Sossamon*, and it did so not because *Sossamon* involved RLUIPA (and thus Congress's exercise of its spending power) but because *Sossamon* arose in the special context of sovereign immunity. *See Tanzin*, 592 U.S. at 51–52.

We therefore conclude that the district court erred in dismissing Barnett's RLUIPA claim against the county. We recognize that there might be some uncertainty

as to whether Barnett is seeking to hold the county liable simply because it employs Short and, if so, whether RLUIPA permits claims based on vicarious liability. But the district court did not consider these questions, and the parties on appeal do not discuss them. So we leave it for the district court on remand to resolve these matters in the first instance should the parties choose to raise them.

Though Barnett's RLUIPA claim against the county may proceed, his RLUIPA claim against Short is a different matter. We do not disagree with Barnett's contention that RLUIPA's text appears to subject Short to liability for damages. Once again, RLUIPA permits claims against a "government," *see* 42 U.S.C. § 2000cc–2(a), and it defines "government" to include county officials and "any other person acting under color of State law." *See id.* § 2000cc–5(4)(A). That language permits suits against individual defendants in both their official and individual capacities. *See Tanzin*, 592 U.S. at 47–48.

But we conclude that Congress's authorization of suits against non-recipients of federal money in their individual capacities exceeds its spending power. That's because "the legitimacy of Congress' power to enact Spending Clause legislation rests not on its sovereign authority to enact binding laws, but on whether the recipient voluntarily and knowingly accepts the terms of that 'contract.'" *See Cummings*, 596 U.S. at 219. Short has not consented to any conditions of federal funding, so it's hard to understand how Congress's spending power can be brought to bear on her directly. To permit suit against her in her individual capacity "would create liability on the basis of a law never enacted by a sovereign with the power to affect the individual rights at issue." *See Sossamon v. Lone Star State*, 560 F.3d 316, 329 (5th Cir. 2009). We do not decide whether Short's acceptance of employment at the jail somehow amounts to her consent to the conditions Congress imposed on her employer because Barnett doesn't argue the point; he simply says that Short's consent isn't required, but we disagree.

It appears we are in the company of every other circuit to have considered the matter, both before and after the Supreme Court held in *Tanzin*, 592 U.S. at 47–48, that plaintiffs could assert RFRA claims against defendants in their individual capacities. *See, e.g.*, *Tripathy v. McKoy*, 103 F.4th 106, 114 (2d Cir. 2024); *Landor v. La. Dep't of Corr. & Pub. Safety*, 82 F.4th 337, 342–44 (5th Cir. 2023). As the Fifth Circuit once explained, "only the grant recipient . . . may be liable for its violation," since "individual RLUIPA defendants are not parties to the contract in their individual capacities." *See Sossamon*, 560 F.3d at 328; *see also Sharp v. Johnson*, 669 F.3d 144, 154–55 (3d Cir. 2012). We have reached the same conclusion for claims brought under Title IX—another Spending Clause enactment. *See Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 610–11 (8th Cir. 1999). Though Barnett correctly points out that Title IX's remedial scheme differs from RLUIPA's, *see Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 640–41 (1999), we anchored our conclusion in *Kinman* to the fact that the spending power doesn't permit individual-capacity claims against officials who aren't funding recipients. *See Kinman*, 171 F.3d at 611. So too with RLUIPA.

Barnett maintains that "the Supreme Court has never required notice to and consent from every person affected by a condition of federal funding." Nor do we. All we are saying is that Congress lacks power under the Spending Clause to impose liability on those who fail to satisfy a condition of federal funding when they did not agree to (or perhaps weren't even aware of) the condition in the first place. That another entity agreed to the condition, even one that's crystal clear, does not mean that Congress can give plaintiffs free reign to haul whoever they please into court, especially when Congress otherwise lacked the authority to bring federal power to bear on that person.

Barnett also directs our attention to *Sabri v. United States*, 541 U.S. 600 (2004). The Court there held that Congress had authority under the Spending Clause and Necessary and Proper Clause to make it a crime to bribe officials who receive

-10-

federal funding, since Congress can properly see to it that the money it appropriates is actually used for the general welfare and "not frittered away in graft." *See id.* at 605. Those punished for bribery, Barnett points out, also do not consent to federal funding conditions, yet the Court permits them to be held responsible.

The law at issue in *Sabri* is too dissimilar from RLUIPA to help Barnett, as many courts have explained. The law in *Sabri* didn't impose conditions of federal funding on nonrecipients; it simply punished those who attempted to interfere with the disbursement of federal funds. *See Tripathy*, 103 F.4th at 114–15. So Congress has power under the Spending Clause to appropriate money and power under the Necessary and Proper Clause to ensure that it goes where it directs. But that doesn't mean it has the power to impose liability on anybody it wants through Spending Clause legislation without that person's consent. *Sabri* simply doesn't go that far. *See also Landor*, 82 F.4th at 344–45; *Sharp*, 669 F.3d at 155 n.15.

As a result, we hold that the district court properly dismissed Barnett's RLUIPA claim against Short in her individual capacity.

We now turn to whether the district court properly dismissed Barnett's § 1983 free-exercise claim against Short in her individual capacity as well. Barnett maintains that the court strayed off track when it read his complaint as not implicating Short in the decision to deny him a Bible. For this claim to succeed against Short, Barnett must allege specific facts showing that Short was personally involved in or directly responsible for the deprivation of his constitutional rights. *See Jones v. City of St. Louis*, 104 F.4th 1043, 1049 (8th Cir. 2024). The district court correctly observed that the officer who responded to Barnett's request for a Bible didn't sign a name next to the written denial of the request and that Barnett did not refer to Short in the portion of his complaint that provided an approximately 30-word summary of what had happened to him.

Nonetheless, construing Barnett's pro se complaint liberally, *see Solomon*, 795 F.3d at 787, we conclude that Barnett attributes the decision to deny him a Bible to Short. For one thing, Short is the only individual that Barnett names as a defendant, though that alone is likely insufficient to carry the day for Barnett. *Cf. Allen v. Purkett*, 5 F.3d 1151, 1153 (8th Cir. 1993) (per curiam). But in addition, when the complaint form asked Barnett about his efforts to exhaust the prison-grievance process, he responded that he appealed the denial of his grievance "but Jail Administrator Brenda Short also answers Apeals [sic] and did'nt [sic] reply." The word "also" in this response fairly implies that Short was the one who rejected Barnett's grievance request. And finally, in his letter to Internal Affairs, Barnett brought up the "numerous grievances I filed with Brenda Short." He also emphasized that everything at the jail went through Short, as she is "Judge Jury and Execution[er]." Taking all this together, we think Barnett sufficiently alleges Short's personal involvement.

We also disagree with the district court's alternative holding that even if Short was personally involved, her decision to deny Barnett's request didn't substantially burden his religious exercise. To succeed on this claim, Barnett must allege that the jail "placed a 'substantial burden' on his ability to practice his religion," which occurs when a decision "meaningfully curtail[s] a person's ability to express adherence to" his faith or denies him "reasonable opportunities to engage in those activities that are fundamental to a person's religion." *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008). The district court read Barnett's complaint to allege that he was deprived of a Bible for only a single day, which, the court said, was only a de minimis interference with his free-exercise right.

The court's reading of the complaint was too unforgiving. It apparently thought that Barnett was alleging only a one-day deprivation because, when the complaint form asked when the incident underlying his suit occurred, Barnett wrote March 15, 2021—the day his prison grievance was dated. But he wrote in that grievance that he

-12-

was told he couldn't have a Bible when he was sent to administrative segregation three days before. It's fair to assume he was saying he hadn't been allowed a Bible thereafter, especially when the response to the grievance confirmed that he would not be receiving a Bible while in administrative segregation. In addition, he wrote in his letter to Internal Affairs, dated about three weeks after his grievance, that he wasn't scheduled for release until April 11, 2021, which was almost a month after he was sent there. And he said he feared he would not actually be released on that date. A fair reading of these materials is that Barnett is saying he did not receive a Bible for the month he was in administrative segregation, if not longer. Given that Short allegedly deprived Barnett of a Bible for a whole month rather than a single day, we think Barnett has alleged a substantial, not a de minimis, burden on his religious exercise. *See, e.g.*, *Blankenship v. Setzer*, 681 F. App'x 274, 277 (4th Cir. 2017) (per curiam); *Garner v. Muenchow*, 715 F. App'x 533, 536 (7th Cir. 2017) (per curiam); *Sutton v. Rasheed*, 323 F.3d 236, 257 (3d Cir. 2003) (per curiam).

Short contends that even if she violated Barnett's constitutional rights, we should still affirm because she is entitled to qualified immunity. "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Plumhoff v. Rickard*, 572 U.S. 765, 778 (2014). A right is clearly established when "any reasonable official in the defendant's shoes would have understood that he was violating it." *See id.* at 778–79. At this early stage in the case, Short's entitlement to qualified immunity must be apparent from the face of the complaint for her to prevail. *See Watkins v. City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024). Unsurprisingly, it isn't. But that's not to say that she will not be entitled to it as the case progresses to discovery and perhaps summary judgment and trial.

We last consider Barnett's § 1983 claim against the county. A county cannot be held liable under § 1983 just because it employs someone who violated the plaintiff's rights. *See Hamilton v. City of Hayti*, 948 F.3d 921, 929 (8th Cir. 2020).

-13-

But it can be held liable when "the action that is alleged to be unconstitutional implements or executes" official municipal policy. *See id.* Official municipal policy is "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *See Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016). So "liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered." *See Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 946 (8th Cir. 2017). We look to local law to determine who has final policymaking authority. *See Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016).

Short did not possess the authority needed to render the county liable for her decision. The county ordinance Barnett cites to support his contention that Short has final authority over the jail actually grants the county sheriff that authority, as the sheriff is the chief corrections officer charged with supervising, managing, and administering the jail, and all others are under his "control, management[,] and supervision." *See* Jefferson County, Mo., Code of Ordinances § 5.2.5.4.; *see also Bolderson*, 840 F.3d at 985. And nothing in Barnett's complaint suggests that the sheriff ratified Short's decision or delegated to her the final authority to make jail policy without the sheriff's review or oversight. *See Soltesz*, 847 F.3d at 946–47. So the district court was correct to dismiss this claim.

In sum, the district court properly dismissed Barnett's RLUIPA claim against Short and his § 1983 claim against the county. But we reverse the court's decision to dismiss the RLUIPA claim against the county and the § 1983 claim against Short, and we remand for further proceedings.

LOKEN, Circuit Judge, dissenting in part.

I would affirm the decision to dismiss Mr. Barnett's § 1983 claim against Ms. Short in her individual capacity for the reasons stated in the district court's opinion. See Barnett v. Short, No. 4:22-cv-00708, 2022 WL 17338086 at *5-*8 (E. D. Mo. Nov. 30, 2022).  I otherwise join the court's opinion.

_____