# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3696
_____

United States of America

*Plaintiff - Appellee*

v.

Mujera Benjamin Lung'aho

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central

_____

Submitted: January 17, 2025
Filed: July 18, 2025

_____

Before GRASZ, STRAS, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

In 2020, Mujera Benjamin Lung'aho threw Molotov cocktails that damaged or destroyed three police cars. He was indicted for maliciously destroying, by means of fire, law enforcement vehicles possessed by local police departments receiving federal financial assistance, 18 U.S.C. § 844(f)(1). Lung'aho moved to dismiss the indictment, arguing that the statute was unconstitutional as applied to him. The

district court[1] held that the Property Clause did not apply because the police cars were not federal property and were not bought with federal financial assistance. But the court denied the motion because the prosecution was constitutional under the Spending Clause coupled with the Necessary and Proper Clause. We agree.

The parties stipulated to the material facts. The police cars belonged to three different state or municipal police departments (Arkansas State Police, Little Rock Police, and North Little Rock Police), and combined there was $86,099.37 of damage. The Arkansas State Police received approximately $10 million in federal funding between 2017 and 2020, and their annual budget was more than $123 million in 2020. The Little Rock Police Department received $280,392 between 2017 and 2020, an additional $786,845 in COVID money in 2020, and had an annual budget of $80 million. And the North Little Rock Police Department accepted $160,000 between 2017 and 2020, an additional $132,168 in COVID money, and had a budget of around $24 million in 2020. This works out to be around 2%, 1%, and 0.7% respectively of the department budgets. No federal money directly paid for the police cars.

We review the district court's denial of a motion to dismiss an indictment *de novo*. *United States v. Williams*, 951 F.3d 892, 897 (8th Cir. 2020). Section 844(f)(1) criminalizes "maliciously damag[ing] or destroy[ing], or attempt[ing] to damage or destroy, by means of fire or an explosive, any . . . vehicle . . . in whole or in part owned or possessed by . . . any institution or organization receiving Federal financial assistance." Lung'aho's conduct falls within the plain meaning of the statute, so the only question is whether it is constitutional as applied to him.

"Section 844(f) was promulgated pursuant to Congress's power under the Property Clause," *United States v. Hersom*, 588 F.3d 60, 62 (1st Cir. 2009) (citing H.R. Rep. No. 91-1549 (1970), *as reprinted in* 1970 U.S.C.C.A.N. 4007, 4046), but

---

[1]The Honorable D.P. Marshall Jr., United States District Judge for the Eastern District of Arkansas.

the "question of the constitutionality of action taken by Congress does not depend on recitals of the power which it undertakes to exercise," *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 570 (2012) (quoting *Woods v. Cloyd W. Miller Co.*, 333 U.S. 138, 144 (1948)).

Under the Spending Clause, Congress has authority "to appropriate federal moneys to promote the general welfare, Art. I, § 8, cl. 1, and it has corresponding authority under the Necessary and Proper Clause, Art. I, § 8, cl. 18, to see to it that taxpayer dollars appropriated under that power are in fact spent for the general welfare." *Sabri v. United States*, 541 U.S. 600, 605 (2004). *Sabri* upheld a federal indictment for attempted bribery of a city official because the city received federal funds. *Id.* at 602–03. As the Court explained, the bribery statute "addresses the problem at the sources of bribes, by rational means, to safeguard the integrity of the state, local, and tribal recipients of federal dollars." *Id.* at 605. The same applies here: preventing the arson of state and local police cars owned by departments receiving federal funding is a rational way of safeguarding federal dollars. And it doesn't matter that the police cars were not purchased with federal funds. "Money is fungible," so the dollars spent on the burned cars need not be "traceabl[e]" to "specific federal payments." *Sabri*, 541 U.S. at 605–06.

Lung'aho's main argument on appeal is that *Sabri* doesn't control because the bribery statute had a "threshold amount" (bribes of $5,000 or more involving agencies receiving $10,000 or more of federal money, 18 U.S.C. § 666) to ensure a substantial federal interest. *Sabri*, 541 U.S. at 606. By contrast, the arson statute has no minimum dollar amount to trigger federal prosecution. To illustrate his concern, he argued below that that he *could* have been charged with violating § 844(f)(1) for torching a five-dollar police trash can, and that can't possibly be constitutional.

Garbage cans, like decorative plants and doormats, *post*, at 9, are not police cars. Those facts could lead to different results. But consider the facts in *this* case. Lung'aho "cannot prevail on [his] *as-applied* challenge without showing that the law

-3-

has in fact been unconstitutionally *applied* to [him]." *Phelps-Roper v. Ricketts*, 867 F.3d 883, 896 (8th Cir. 2017) (cleaned up) (quoting *McCullen v. Coakley*, 573 U.S. 464, 485 n.4 (2014)). It is undisputed that Lung'aho caused over $86,000 in damage to the three police cars and that the departments each received more than $10,000—the thresholds that Lung'aho admits were enough in *Sabri*. *See* 541 U.S. at 606. All told, based on the facts of this case we do not think the federal interest is "miniscule," *post*, at 6, but instead "certainly enough," *Sabri*, 541 U.S. at 606.

Lung'aho also suggests that arson, unlike bribery, is not "sufficiently related" to Congress's spending power because the bribery statute directly implicates anti-corruption. *See United States v. Fitzgerald*, 514 F. Supp. 3d 721, 746 (D. Md. 2021). But "the Necessary and Proper Clause makes clear that the Constitution's grants of specific federal legislative authority are accompanied by broad power to enact laws that are 'convenient, or useful' or 'conducive' to the authority's 'beneficial exercise,'" *United States v. Comstock*, 560 U.S. 126, 133–34 (2010) (quoting *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 413, 418 (1819)), and criminalizing the arson of police cars from police departments receiving federal funding is a "rational means" of ensuring federal funds are used "in the manner Congress intended," *Sabri*, 541 U.S. at 605; *Sebelius*, 567 U.S. at 576.

Because money is "fungible" and property is not "inherently interchangeable," the dissent suggests that the Government must show "a connection between" the burned police cars and the federal assistance. *Post*, at 9. We don't think so. Even though the cars were not bought with federal money, their destruction necessarily depleted the resources of the three departments. And because money is fungible, there is interference with the value of disbursed federal dollars—whether the federal funds were "drained off" via bribe, used to replace cars burned up by arson, or used to backfill other funding diverted to replace the cars. *See Sabri*, 541 U.S. at 606. *But see Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 220 (2013) (fungibility of money limited when funding conditions "require [an organization] to pledge allegiance to the Government's policy").

We reject the suggestion that we are improperly extending the reach of federal power because "arson is a paradigmatic common-law state crime," *Jones v. United States*, 529 U.S. 848, 858 (2000), and we do not risk "nullifying" *Jones*, *post*, at 7. Federal criminal jurisdiction may be extended to "traditional crimes of local concern." *See United States v. Hari*, 67 F.4th 903, 909 (8th Cir. 2023). And *Jones* invoked constitutional avoidance to interpret an ambiguous statute, *see* 529 U.S. at 857–58, but no one suggests that § 844(f)(1) is ambiguous—it clearly applies to Lung'aho's conduct. So we are left to apply the clear text of the statute and authoritative Supreme Court precedent.

But more to the point, *Sabri* rejected that it was "convert[ing] congressional authority under the Commerce Clause to a general police power of the sort retained by the States." 541 U.S. 607–08 (quoting *United States v. Lopez*, 514 U.S. 549, 567 (1995)). Under the Spending Clause and the Necessary and Proper Clause, "Congress was within its prerogative to protect spending objects": the power to protect expenditures is "bound up with congressional authority to spend." *Id.* at 608. Because there is no reason to distinguish arson from bribery, and Lung'aho has not shown that criminalizing the arson of police cars from departments receiving federal funding "'has nothing to do with' the congressional spending power," *id.* (quoting *Lopez*, 514 U.S. at 561), *Sabri* controls.

The dissent finally argues that because Lung'aho did "not 'interfer[e] with the disbursement of federal funds,' Congress exceeds its power 'to ensure that [its appropriation] goes where it directs.'" *Post*, at 9 (quoting *Barnett v. Short*, 129 F.4th 534, 543 (8th Cir. 2025)). Religious Land Use and Institutionalized Persons Act, the law at issue in *Barnett*, "impose[s] conditions of federal funding on nonrecipients." 129 F.4th at 543. But unlike the law in *Sabri* or § 844(f)(1), RLUIPA does not "punish[] those who attempt[] to interfere with the disbursement of federal funds." *Id.* Simply put, RLUIPA is "too dissimilar." *Id.*

Our dissenting colleague warns: "*Sabri* need not be interpreted so broadly." *Post*, at 7. With respect, *Sabri is that broad*. 541 U.S. at 614 (Thomas, J., concurring

in judgment) ("[T]he Court's approach seems to greatly and improperly expand the reach of Congress' power under the Necessary and Proper Clause.").  Based on the facts in this case and bound as we are by Supreme Court precedent, we are compelled to conclude that that § 844(f)(1) was constitutionally applied to Lung'aho.

The judgment of the district court is affirmed.

GRASZ, Circuit Judge, dissenting.

Fundamental to our federal system is the principle that the Constitution "withhold[s] from Congress a plenary police power."  *United States v. Lopez*, 514 U.S. 549, 566 (1995) (citing U.S. Const., art. I, § 8).  We have understood this principle for over two centuries.  *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 428 (1821).  But the majority's reasoning suggests Congress may simply purchase that police power through financial assistance — including miniscule assistance unrelated to the affected property.  Under the doctrine of enumerated powers, even Congress's power under the Spending and Necessary and Proper Clauses is restrained.  Thus, while Lung'aho's conduct was subject to severe penalties under state laws,[2] I would conclude application of § 844(f)(1) exceeded Congress's power under these facts, and therefore reverse.

"[A]rson is a paradigmatic common-law state crime."  *Jones v. United States*, 529 U.S. 848, 858 (2000).  As a result, important questions related to the balance of state and federal power enshrined in our Constitution arise when federal arson statutes turn "traditionally local criminal conduct" into "a matter for federal enforcement."  *Id.* (quoting *United States v. Bass*, 404 U.S. 336, 350 (1971)).  In *Jones*, the Supreme Court addressed the statutory scope of 18 U.S.C. § 844(i), a sister provision to the § 844(f)(1) offense under which Lung'aho was charged.  *See id.* at 852.  Section 844(i) criminalizes malicious destruction by fire of any property used in interstate or foreign commerce or any activity affecting interstate or foreign

---

[2]*See* Ark. Code §§ 5-4-401(a), 5-38-301(a)(1)(A), 5-38-301(b).

commerce. 18 U.S.C. § 844(i). To avoid the constitutional concerns if § 844(i) were read to apply to "[p]ractically every building in our cities, towns, and rural areas," the Supreme Court held that "the provision covers only property currently used in commerce or in an activity affecting commerce." *Jones*, 529 U.S. at 857, 859. It was not enough that the property was constructed with supplies that had moved in interstate commerce or was served by some entity with a trace to interstate commerce. *Id.* at 857. *Jones* cautions that Congress cannot turn every arson into a federal crime.

Like § 844(i), § 844(f)(1) includes similar expansive language capable of upending the federal-state balance. Section 844(f)(1) covers arson of "any building, vehicle, or other personal or real property in whole or in part owned or possessed by, or leased to, . . . any institution or organization receiving Federal financial assistance." 18 U.S.C. § 844(f)(1). Countless institutions and organizations receive federal financial assistance today. Can Congress declare that burning property belonging to one of those organizations makes one a federal arsonist subject to five to twenty years of imprisonment, regardless of whether that property has any connection to federal assistance?

*Jones* responds no, but under the majority's approach, the answer is yes. *Jones* cautioned that the federal-state balance does not allow Congress to use the Commerce Clause "to make virtually every arson in the country a federal offense," so Congress could only protect property that was itself tied to commerce, the basis for the exercise of federal power. *Jones*, 529 U.S. at 859. Nevertheless, *Sabri v. United States*, 541 U.S. 600 (2004), the majority claims, allows Congress to safeguard federal spending by criminalizing any damage or destruction to any property of the funding recipient, regardless of the relationship between the exercise of federal power and the property at issue. *Ante*, at 3–5. This interpretation risks nullifying *Jones*, and *Sabri* need not be interpreted so broadly, especially in this case of first impression. *Sabri* dealt with a bribery statute that prohibited anyone from corruptly giving anything of value to someone with the intent to influence an agent of an organization in connection with any business exceeding $5,000 if that

organization receives over $10,000 in federal benefits in a year.[3] *See Sabri*, 541 U.S. at 603 (citing 18 U.S.C. § 666(a)(2), (b)). The defendant in *Sabri* brought a *facial* challenge, arguing that the statute was wholly unconstitutional because it did not "require proof of any connection between a bribe or kickback and some federal money." *Id.* at 604. The Supreme Court concluded the Spending and Necessary and Proper Clauses authorized Congress to ensure "taxpayer dollars appropriated under that power are in fact spent for the general welfare, and not frittered away in graft or on projects undermined when funds are siphoned off or corrupt public officers are derelict about demanding value for dollars." *Id.* at 605. The Supreme Court did not require the bribe to itself involve the funds from the federal benefit because "[m]oney is fungible, bribed officials are untrustworthy stewards of federal funds, and corrupt contractors do not deliver dollar-for-dollar value," so corruption could still "affect the federal interest" even if not directly traceable to those funds. *Id.* at 606. In other words, Congress can, consistent with the Constitution, root out financial corruption in an organization receiving federal benefits to ensure that the benefits are not squandered because corruption in one area signals corruption that undermines the federal benefits program.

Arson does not share these characteristics. Bribery of a funding recipient on one project indicates the recipient or its agents are susceptible to bribes involving federal money or are otherwise likely to waste it. But Lung'aho's destruction of

---

[3]This "benefits" element of the bribery statute requires more than mere "receipt of federal funds" or "participati[on] in a federal assistance program." *See Fischer v. United States*, 529 U.S. 667, 681 (2000). As the Supreme Court cautioned, if "benefits" included all fraud or bribery of any entity that receives some federal funds, it "would turn almost every act of fraud or bribery into a federal offense, upsetting the proper federal balance." *Id.* To dispel this concern, the "benefits" element includes examining "the [federal assistance] program's structure, operation, and purpose" and "the conditions under which the organization receives the federal payments" to see if the alleged fraud or its effect on the recipient "threaten[s] the program's integrity." *Id.* The Supreme Court in *Sabri* did not discuss this aspect of the offense, likely because the defendant brought only a facial challenge, so the particularities of the benefits program received by the bribed organization were irrelevant to his arguments. *See Sabri*, 541 U.S. at 608–09.

police vehicles says little about the law enforcement entities' stewardship of federal dollars. It does not indicate the recipients are wasting taxpayer dollars on boondoggles or overpaid contractors. Nor does it show the recipients are likely to fail to protect the items secured by federal funds. Making arson a federal offense as to any property belonging to a recipient of financial assistance does not protect federal dollars when those dollars do not pay for the property in question and the government fails to show that the assistance could be used to purchase similar property. Money is fungible, but property is not inherently interchangeable. After all, if federal assistance is given to an organization so it can purchase equipment to improve its technology, burning its decorative shrubs or doormat does not undermine that expenditure — the organization's improved technology is unaffected. The same is true of Lung'aho's conduct in the absence of a connection between that property and the federal assistance. In these circumstances where the defendant's actions are not "interfer[ing] with the disbursement of federal funds," Congress exceeds its power "to ensure that [its appropriation] goes where it directs." *See Barnett v. Short*, 129 F.4th 534, 543 (8th Cir. 2025). It instead is trying to "impose liability on anybody it wants through Spending Clause legislation without that person's consent." *See id.* "*Sabri* simply doesn't go that far." *See id.*

If the majority's reading of *Sabri* is correct, what is outside Congress's power to police in today's age of massive federal assistance? Here, we deal with entities whose federal assistance is a negligible part of their overall budget, and not a cent of that assistance went to purchase the damaged property.[4] Yet the majority concludes preventing arson of these organizations' property is a "rational way of safeguarding federal dollars" simply because those entities receive federal money. *Ante*, at 3. If this conduct falls within Congress's power, it seems there is little or no property destruction that Congress could not federalize. Arson itself cannot be the limitation because arson is a "paradigmatic" state matter. *See Jones*, 529 U.S. at

---

[4]Nor is there evidence that the money was used to purchase other police vehicles or similar property. Indeed, the government failed to establish specifics on the actual purpose of the financial assistance received by the victim entities.

858. And, as another circuit has recognized, "a wide variety of organizations, both private and non-profit," as well as the state and local government entities here, "receive some form of federal financial assistance" to obtain property. *United States v. Hersom*, 588 F.3d 60, 67 (1st Cir. 2009). As a result, and contrary to *Jones*, "[a]pplying [§ 844(f)] to cover all property owned by such entities would transform a broad swathe of 'traditionally local criminal conduct' into a 'matter for federal enforcement.'" *See id.* (quoting *Jones*, 529 U.S. at 858).

The Spending and Necessary and Proper Clauses do not uniquely evade these federalism concerns, particularly when they are not invoked to create a contractual obligation on the recipient. *See Barnett*, 129 F.4th at 543; *Fischer*, 529 U.S. at 681 (discussing the potential for federalism concerns if the federal bribery statute were interpreted such that "federal funds disbursed under an assistance program will result in coverage of all recipient fraud"). And contrary to the majority's suggestion, *ante*, at 5, *Sabri* did not say otherwise because it rejected the charge of federal overreach based on characteristics of bribery inapplicable to arson. The bribery statute facially passed muster because Congress can "protect spending objects from the menace of local administrators on the take." *Sabri*, 541 U.S. at 608. Congress's ability to spend required it to be able "to keep a watchful eye on expenditures and on the reliability of those who use public money," which allowed it to impose liability even when the specific federal funds were not used because bribery in one area suggests wastefulness in all aspects of spending, including the ones given by Congress. *Id.* at 606, 608. Thus, the federal interest in the benefit recipient's treatment of its expenditures extends broadly. But for property, the federal interest applies only to the property for which Congress expects its funds to be used. If the federal funds were not used to purchase that property (or replacement property), Congress is not "protecting spending objects." *Cf. id.* at 608. It instead exceeds its enumerated authority.

Thus, I would not read *Sabri* to authorize this federalization of almost all arson. Instead, I would take the Supreme Court at its word when it has consistently declared that Congress lacks a general police power. *E.g.*, *Lopez*, 514 U.S. at 566;

*Bond v. United States*, 572 U.S. 844, 854 (2014); *Cohens*, 19 U.S. (6 Wheat.) at 428. Such instruction means little if we accept the idea that Congress can simply purchase police power by giving a few dollars to entities that later become arson victims. For these reasons, I disagree with the majority's construction of *Sabri* and would conclude that § 844(f)(1) cannot constitutionally apply where the property destroyed is not tied to the federal financial assistance. Lung'aho's conduct was undoubtedly wrong. But in our system of enumerated federal powers, it was a local crime that belonged to Arkansas to punish, not the federal government. I respectfully dissent.

———————————————